ELIZABETH BRIGHTMAN *v.* LEMUEL BRIGHTMAN AND NATHANIEL PEARCE.

If a *feme covert* has obtained a decree of divorce, and is allowed *alimony* out of the rea¹ and personal estate generally of her husband, and at the time of filing her petition, the husband was seized and possessed of a particular farm, which he conveyed, with the growing crop, to a purchaser, before the granting of the petition, the conveyance is not fraudulent; and the purchaser, although he was informed of the pendency of the petition, would not take the farm, subject to the decree subsequently passed on the petition. In such case, the rule of *lis pendens* does not apply; though if the prayer for *alimony* had been to have it assigned out of the farm in question, the case would have somewhat resembled the cases in which the rule of *lis pendens* has been applied.

If one purchases property, pending a suit in which the title to it is mooted, he takes it subject to the judgment or decree that may be passed in such suit against the person from whom he purchases; and that he purchased *bona fide* and for a valuable consideration, will not avail against such judgment or decree. But the rule only relates to suits involving the title to property.

THIS was a bill in equity, the facts set forth in which, with the charge, and prayer of the complainant, and the separate answers of the respondents, will appear in the following opinion of the court, delivered by

STAPLES, J. The complainant, in her bill of complaint, sets forth, that on the 9th day of July, 1841, she filed in the clerk's office a petition to this court at its August term following, praying for a decree of divorce against the said Lemuel, for reasons therein set forth, and for alimony out of his estate, notice of which was duly served on said Lemuel on

the 19th day of the same July. That on the 7th day of said August term, being the 3d day of September, 1841, the said petition was granted, the bond of matrimony then subsisting between her and the said Leonard thenceforth dissolved, and she allowed as alimony out of the real and personal estate of said Lemuel the annual sum of forty dollars during her natural life, payable semi-annually, on the 2d days of March and September in every year ; and that for the faithful payment thereof, all the real estate of the said Lemuel, and his person, should stand bound and be pledged. And further, that the said alimony was duly paid her until within about one year before the filing of her bill.

She further avers, that at the time of filing said petition, said Lemuel was seized and possessed of real estate in Little Compton, in the county of Newport, of the value of three thousand dollars, and that on the 25th day of August, said Lemuel made a deed thereof to the other respondent, together with all the crops then growing and being thereon, for the nominal consideration of three thousand dollars ; and further, that said Lemuel is now residing in Tiverton, in said county, and is unable to pay any debt, however small.

The complainant charges in her said bill, that the respondents, confederating and contriving to injure her and to deprive her of her alimony so decreed to her, executed and received the deed aforesaid, of said real estate and crops, without paying and receiving any good or valid consideration therefor, in fraud of her rights.

The prayer of the bill is, that the said deed may be set aside, and so much of said real estate sold as will pay the arrearages of her alimony, and raise a fund the income of which may be applied in future to the discharge of her alimony as the same shall become due. There is also a prayer for general relief.

10*

The defendants sever in their answers. The answer of said Lemuel admits the filing of the petition for divorce, the service of notice thereof on him, and the granting of the same with alimony as set forth in said bill. He further admits that when said petition was filed, he was seized and possessed of the real estate referred to in said bill, averring however that the same was then subject to a mortgage to one John Chace, for about sixteen hundred dollars. But he denies that the said real estate now is or ever was liable to be charged with the payment of the alimony decreed to said complainant. He admits that he conveyed said estate, with the crops being and growing thereon, to Nathaniel Pearce, on the 25th day of August, 1841, for the sum of thirty-two hundred dollars ; but he denies that he ever had, at the time of said conveyance, any reason to suppose that any decree would or could be passed by the court on said complainant's petition for divorce and alimony, which would operate as a lien on said estate. He avers that the sale was made in good faith, and without any intention to injure or defraud the complainant. He states that, at the time of the making of said deed, said Pearce gave him a note for three thousand dollars, with the understanding that when he, Pearce, should take up the Chace mortgage of said estate, he should give him two notes of five hundred dollars each, payable on time, and a note for the balance, including the crops, on demand, which notes he subsequently received of said Pearce, and that the same were afterward paid and taken up by him. He further states, that he had been anxious for a long time previous to his deed to said Pearce, to sell said estate, in order to prevent his interest therein being sacrificed under the Chace mortgage. He further states, that being told that said Pearce wished to purchase a farm, he went to him at Fall River, as he believes, in June, 1841, and offered him his said farm

for three thousand dollars.   About a week or ten days after this, said Pearce went and examined said farm, and that at that time he contracted to sell, and said Pearce to purchase said estate for said sum ; and it was agreed between them, that the conveyance thereof should be executed at the convenience of said Pearce.   He further states, that the deed of said estate was drawn by Otis Wilbur, at the instance and cost of said Brightman, and was executed and delivered dn the day of its date, on which day he surrendered possession of the said premises to said Pearce, and has never been in possession thereof since.   The crops were surrendered to said Pearce on the same day ; and he, said Pearce, received and enjoyed the same.

He admits that there is the sum of sixty dollars due to the complainant for alimony.

Nathaniel Pearce, the other respondent, in his answer avers, that he did not, of his own knowledge, know, in the months of July and August, 1841, that the complainant had petitioned for a divorce from her husband, but thinks that he heard of it in August.   He admits that he received from Lemuel Brightman, on the 25th day of August, 1841, the conveyance referred to in said bill, but denies that he had at that time heard that the complainant, in her petition for divorce, had prayed for alimony, or that said real estate was, or in any event could be charged with the payment of alimony to said complainant, or that any lien could be created on said estate by any decree to be passed on her petition for divorce.   He avers, that said conveyance was received by him in good faith, and that the purchase was made by him for a full and valuable consideration, and not in consequence of the pendency of said petition, or to prevent the pledge of said estate for the payment of alimony.   He further avers, that Lemuel Brightman proposed to him at Fall River, to

purchase said real estate, some five or six weeks before the conveyance of the same was made, at the price of three thousand dollars, and that said Brightman then stated as his reason for wishing to sell the same, that it was under mortgage for more than he could command. That he went and examined the premises at least four weeks before the conveyance, and at that time agreed to purchase the same and to take a deed thereof at some early day, to suit his convenience. Between this interview and the date of the conveyance, he purchased the crops being and growing on said real estate of said Brightman for the sum of two hundred dollars. He avers that at the execution of the conveyance, he gave Brightman his note for three thousand dollars, and that the amount to be paid for the crops was left unsettled to await the adjustment of some other dealings between them. The note was given with the understanding that he was to pay the amount of the mortgage on the estate, and then that the balance of it should be secured and paid by three notes, two for five hundred dollars each on time, and the other on demand, for the balance, including the amount for the crops ; all of which three notes he has since discharged and paid. On the day of the date of the deed, he took possession of said estate and crops, which he has ever since retained. That said Brightman proved the deed to be drawn, and paid for drawing the same. He avers that he is ignorant as to the amount due the complainant for alimony ; denies all confederacy and combination with his co-defendant to defraud the complainant, averring that he bought the estate in good faith for thirty-two hundred dollars, without any intent to injure the complainant and without notice of her claim on the same for alimony.

The complainant filed the general replication, and the cause came on to be heard on the bill, answers and proofs.

The counsel for the complainant rest their claim to a decree for the specific relief prayed for in the bill, on two grounds. First, that the conveyance from Brightman to Pearce was made and received with the knowledge, on the part of both respondents, of the pendency and prayer of the complainant's petition for divorce and alimony, and with intent to defraud her.

Second ; that being made pending said petition, the purchaser took the estate subject to any decree that might be passed on it.

As to the first point. Such knowledge and fraudulent intent is expressly charged in the bill. Brightman admits that he knew of the pendency of the petition for divorce and being served with a copy of it on the 19th of July. It must be assumed that he then knew it contained a prayer for alimony. Pearce also, according to his answer, knew of the pendency of a petition for divorce in August, and probably before he took the deed ; but both of the respondents aver that the sale and purchase were made without reference to that petition, *bona fide,* and for a full and fair consideration. Brightman's farm, it appears from the evidence, was under mortgage to John Chace. He stated this fact to Pearce, gave it as a reason why he wished to sell it, as he feared he should not be able to raise money to pay it off. This was in June, as stated by Brightman, and before the filing of the petition for divorce. Pearce states it to have occurred about five or six weeks before the 25th of August. Brightman says that the contract of sale was made in a week or ten days after this conversation, and Pearce says it was more than four weeks before the 25th of August. There is no evidence that Pearce knew of the filing of the petition at the time the contract of sale was made ; he avers that he knew nothing of it until into the month of August. The proposition for the sale

came from Brightman; and, from all the evidence, this was before the 19th of July, when he was served with a copy of the petition. He gave at the time a true and sufficient reason for wishing to sell it. He asks, what the complainant in her bill states to be a fair price for it. Pearce wishing to purchase a farm, examines this, and concludes a contract for it, and arrangements are made for carrying the contract into effect at a future day. Between this and the giving of the deed, the parties meet again and agree upon the transfer of all the crops being and growing on said farm. Is there anything strange in this? Part of the crops were then growing and part were gathered. Brightman's interest in the farm was gone, he was to remove. He naturally would desire to sell the hay, &c. in the barns, and as Pearce was soon to take possession, it was natural that he should be the purchaser. The crops were such as a tenant on the farm would require, and they were worth more to him than to any one else. There is nothing in the conduct of the respondents, thus far, to induce a suspicion of anything further than they disclose in their answers. Some time about the time of the contract, and certainly not earlier, it is in proof that some suggestions were made to Pearce that he might involve himself in difficulty by making the purchase. No person, it is proved, spoke out plainly as to what those difficulties were. But it is evident there were some that he must have seen and known, and to which he may well have supposed that these persons alluded. Brightman was a married man; his wife had left his house; there were disputes between them; it may be Pearce knew she had petitioned for a divorce. She had an inchoate right of dower in the premises. The husband could not give a perfect title unless she would sign the deed; and Pearce, under the circumstances of the case, could not believe that she would sign it. He then would not

Brightman *v.* Brightman et al.

get a clear title to the land. He might have thought that allusion was made to this circumstance by those who warned him of danger, and he might have thought that if she succeeded in her petition, it would discharge the estate of her right; and this may have prompted the reply he made. If she was divorced then or at any future time, her right of dower would cease, and she.would, if she petitioned for it, have alimony assigned her in lieu of dower out of her husband's estate. This was assignable out of the husband's personal estate, as well as his real. Brightman received of Pearce the full value of his real estate. If his fund of real estate was diminished by the sale, just so much was his fund of personal increased. Nothing of his property was lost; it only changed its form. The fund from which alimony was to be taken, if claimed on the petition, was unaltered as to amount. And this change, according to the answers of both respondents, was made *bona fide*, and without any intent to injure or defraud the complainant. There is nothing in the circumstances of the case, nothing in the proofs exhibited, which impugns the answers on this point. We must take it therefore as not proved in the cause, that the deed was given and received with any intent to injure and defraud the complainant, and the contrary must stand as the fact in the case.

The complainant says, in the next place, that though the said deed was made and received *bona fide*, and upon a fair consideration, yet, being made pending her petition for divorce and alimony, the purchaser took the estate subject to the decree subsequently passed on said petition.

We apprehend it is well settled, that he who purchases property pending a suit in which the title to it is involved, takes it subject to the judgment or decree that may be passed in such suit against the person from whom he purchases.

That he purchased *bona fide*, and paid a full consideration for it, will not avail against such judgment or decree.

Nor will he be permitted to prove that he had no notice of the pendency of the suit. The law infers that all persons have notice of the proceedings of courts of record.

This rule has been adopted from motives of public policy. Without it, the effect of every judgment and decree of this nature might be avoided by a mere transfer of the defendant's title, as a decree or judgment was about to be pronounced against him. 11 Ves. R. 197. A party might always be in pursuit of his rights without being able to overtake them. 2 Peere Wms. R. 264.

But the rule only relates to suits involving the title to property, and is not to be extended beyond the property involved in the suit. 1 McCord's Ch. R. 264. The suit must relate to the estate, and not to anything collateral, such as money secured on it. 3 Atk. 392. The rule applies where a third person attempts to intrude into a controversy by acquiring an interest in the matter in dispute pending suit. 4 Cow. 667 ; 2 Johns. Ch. Cases, 445.

We do not apprehend that the rule of *lis pendens* is applicable to this case. The prayer of the complainant's petition was for divorce and for alimony out of her husband's estate. It did not affect the title to his real estate, or necessarily seek to put any incumbrance on it. Alimony is to be granted out of the personal or real estate, and not necessarily a charge on either. Had the prayer in this case been for alimony to be assigned her out of this particular farm, the case would have somewhat resembled some of the cases in the books, where the rule has been applied. But it is not so ; it is general for alimony out of his estate. If such a prayer locks up the real, it equally does the personal estate of a respondent to such a petition, and each and every part of it. The

instant such a petition is filed, the respondent's business, however extensive it may be, must stop. Purchasers and dealers with him, by the policy of the law are bound by the decree for alimony that may be passed, although they do not even know that they are dealing with a married man. Alimony will be claimed, and must be allowed to attach to any and every part of the personal property that the husband had at the filing of the petition. We do not think this case falls within the rule of *lis pendens,* nor within the reason of that rule.

The complainant's bill must therefore be dismissed with costs.