### ANN W. SPENCER *v.* WALTER SPENCER and others.

When S., wife of O. B. S., had obtained a decree of divorce from bed and board and future cohabitation with her husband and the custody of her children, said decree charging certain real estate of the husband, with a fixed annual payment decreed to her for her own use and the support of her children ; *it was held*, that the court would not, at her suit, pass a decree enjoining creditors of the husband who had made attachments on said estate and subsequently obtained judgments in the suits in which said attachments were made, and who had levied their executions thereon, from proceeding with their executions, nor would the court declare the liens created in her favor by the decree entered in her petition to have precedence of said attachments or levies because said attachments were made subsequently to and with notice of the *filing* of the petition, when it appeared that they were made previously to the *service* thereof.

*Held, further*, that she was not entitled to such a decree, because her aforesaid decree of divorce and alimony was entered prior to the levies made by the defendants on their executions. That the attachments, and not the levies, determined the rights of the parties.

*Held, further*, that although the aforesaid S. had filed her ancillary petition, service of which had been made prior to the aforesaid attachments upon W. S., the attorney in fact of O. B. S., and a decree had been passed enjoining the said O. B. S. and W. S. from alienating or encumbering the estates described in the principal petition, (being the estates attached as aforesaid,) until the hearing therein, and charging said estates with an *ad interim* allowance, neither the filing of the petition, nor the decree entered therein, could have any effect to defeat or postpone these attachments.

The laws of Rhode Island, except to the extent of the right of dower, do not accord to the right of wife and child to support out of the husband's property, a preference over the right of the creditor to payment, but rather the reverse.

The filing of a petition for divorce and alimony does not create a lien on the property therein described and out of which alimony is prayed, before service.

Doctrine of *lis pendens* considered. If applicable to petitions for divorce, it is applicable only on the ground that the property described, having by the service of the petition been put in litigation, will be held to abide the event of the suit, to prevent the defeat or embarrassment of the litigation by any alienation made or lien acquired *pendente lite.*

*Hence,,* notice of such a petition to third persons, who are creditors of the respondent husband, is not, as to such persons, equivalent to service, so as to postpone the *bona fide* attachments.

BILL IN EQUITY, founded on the decree of the Supreme Court upon the petition of Ann W. Spencer, above mentioned, against her husband, Obadiah B. Spencer, for a divorce *a mensa et thoro* and for alimony, filed at the March term, 1866. On that petition a decree was rendered at the March term, 1867, granting the divorce prayed for, and assigning to her a certain sum for alimony and support of children, and charging the payment of such sums upon certain real estate of the said Obadiah B. Spencer, described in the original petition. That petition, when filed, was accompanied with a petition for an injunction against Walter Spencer, one of the defendants to the present bill, to restrain him, as attorney for said Obadiah B. Spencer, from disposing of any of the property above referred to. Immediately after the service of that injunction, and before any service whatever had been made upon the defendants in the divorce petition, or any steps had been taken for such service, the said Walter Spencer caused the real estate above referred to, to be attached for a debt due to him from said Obadiah B. Spencer. His co-defendants, Allen & Baker and Thomas P. Allen, surviving partners of the firm of Allen & Hawkins, followed his example, and attached the same property upon debts due to them respectively. In these cases judgment was rendered by default at the October term of the Court of Common Pleas, 1866, at which point the complainant in the present bill intervened and appealed from the judgment of the Court of Common Pleas in these cases, and the appeals were duly entered at the next March term of this court. The appeal in the last case was dismissed, as taken unadvisedly, but in the other cases

judgment was rendered for the respective plaintiffs after a hearing, at which the said Ann W. Spencer was represented by her counsel. Execution having duly issued in these three cases, and been levied upon the real estate attached in the original writ, it was duly advertised for sale by the sheriff. Before the time of sale arrived, the complainant in this bill having obtained the decree referred to above, filed this bill, praying, among other things, for an injunction restraining the sale, under the execution, and a temporary injunction was granted enjoining the sale till further order of the court. The several allegations of the bill were substantially as follows :—

1. The fact of the filing of the original petition for divorce by the complainant, and the terms of that petition.

2. That the homestead described in the petition was originally purchased with the moneys of the complainant ; that the deed was taken in her husband's name without her knowledge or consent ; and that the same allegations also appear in the original bill.

3. That Walter Spencer, one of the present respondents, held at the time of the filing of the divorce petition, a power of attorney from Obadiah B. Spencer to sell and otherwise control the real estate in question.

4. That at the time of filing her said petition of divorce, the complainant also filed a petition for a special *ad interim* injunction, to which said Walter Spencer was made a party, and was served with process thereon before he caused the attachment in question in this bill to be made.

5. That upon the petition for injunction, a decree was rendered, enjoining Obadiah B. Spencer and Walter Spencer, until further order, from selling, mortgaging, disposing of, or otherwise encumbering said estates. She further alleged the making of the final decree in the divorce petition, referred to above, for the contents of which, also, reference may be made to the original decree.

6. The complainant further alleged the obtaining of judgment, by the defendants, against the said Obadiah B. Spencer, in various sums, by default, and the levy of the executions

founded on these judgments upon the estates referred to in this bill.

7. The complainant further alleged, that Walter Spencer had, at the time of his attachment, actual notice of the pendency of the divorce petition, and that the other defendants, either directly or indirectly, through their attorney, had actual or constructive notice.

8. That her husband, Obadiah B. Spencer, was out of the country, probably at the Sandwich Islands, and that she had no other means of support, and of satisfying the decree of the court, except this property.

Upon these allegations, the prayer of the bill was, substantially, that the "liens charges claim and rights of the complainant under the above decrees," may be declared to have precedency of the claims of the defendants under their attachments and levies, and that they may be perpetually enjoined from further proceedings, under the same, for the sale of the vacant lot, for the purpose of satisfying the *ad interim* decree of the court rendered at the March term, 1866, allowing the complainant certain sums for her support and that of her children, &c., and for other and further relief.

The answer of Walter Spencer alleged, substantially, in answer to the second allegation of the complainant, after admitting that a portion of the original purchase money of the homestead estate, about four hundred dollars, was the property of the complainant; that the balance of the purchase money, and all the moneys subsequently expended upon the estate, these latter, amounting to about $1100, were moneys of complainant's husband, and denied that the deed of said estate was taken in her husband's name without her knowledge or consent, but on the contrary, asserted that it was done with her knowledge and assent, and that, since the date of the deed, viz.: December 26th, 1846, down to the filing of her petition, the complainant had acquiesced in her husband's title, and permitted him to appear to the world as the undisputed owner of the premises in question, and that, relying upon the security of the real estate referred to in this bill, he had made advances of various kinds to

the complainant's husband, now merged in the judgment above referred to. He further admitted that the same allegation formed a part of the original petition, but alleged that the court wholly refused and failed to grant the prayer of the petition in that particular.

In answer to the sixth allegation, he denied that his judgment was obtained by default, but asserted that the complainant appeared at the trial of the cause, and was heard thereon as fully as she saw fit.

In answer to the seventh allegation, he admitted having notice, as set forth in the bill, but alleged that at the time of his attachment no service had been made upon the respondent in the divorce petition, nor had steps been taken to have such service made.

The other allegations of the complainant's bill he substantially admitted.

The joint and several answers of the defendants, Thomas P. Allen and Jesse Barber, in reply to the complainant's second allegation, made substantially the same denials and allegations as that of Walter Spencer.

In response to the sixth allegation of the bill, they denied that the judgment in favor of Allen and Barber was obtained by default, and asserted that the complainant intervened and was heard thereon as fully as she saw fit.

In reply to the seventh allegation of the bill, they denied having any notice, directly or indirectly, of the pendency of the complainant's petition at the time of their attachment, and further denied, that they had any regularly retained attorney at that time, and they also further alleged, that at the time of their attachments no service had been made upon the defendant named in complainant's petition for divorce in any of the modes prescribed by law, and that no steps had been taken to make such service.

The other allegations of the bill they substantially admitted. To these answers the complainant filed the general replication.

The cause came on for a hearing on the bill, answers, replication, and the following agreement signed by the parties :—

"SUPREME COURT—*In Equity.*

*Ann W. Spencer* v. *Walter Spencer.*

"It is hereby admitted for the defendants, Thomas P. Allen and Jesse Barber, in the above case, that the facts with regard to the said defendants having notice of the pendency of the divorce suit of the said Ann W. Spencer, are as follows:—That Walter Spencer, one of the co-defendants in this bill, employed J. W. Congdon as an attorney to make an attachment upon the property described in the above bill, and that said Congdon then had notice of the pendency of said divorce petition. That said Allen & Barber, having heard from said Congdon that Walter Spencer had attached, and being advised by him to attach at once, ordered him to attach at once for them, which he proceeded to do as their attorney. That at that time, the said Allen & Barber received from him no information whatever of the pendency of said petition for divorce, and received no notice thereof till some time after the attachment was made. That the omission to inform them of the same was not intentional, but arose from haste and press of business. And it is further agreed, between the parties, that the above case shall be tried upon the issues of law raised by the bill, answer of the defendants, and the above admission of the defendants, so far as the same may be done independently of any issues of fact raised by the same, with liberty to both parties to refer to the files of the said divorce petition, and of the cases of *Walter Spencer* v. *Obadiah B. Spencer, Allen & Barber* v. *Same,* and *Thomas P. Allen* v. *Same,* for the proof of all facts depending upon the records in said cases, and with further liberty, to either party, to have a further hearing upon any issues of fact, arising in the case, left undetermined, which shall become in any way material to the cause."

*James Tillinghast, for complainant:*—

I. The right to alimony follows upon the divorce, and springs from the marital relation, and the obligation of the husband to support the wife, and is thus founded in the highest equity, and it becomes the duty of the court to secure it for her. 2 Bishop on Mar. and Div. (Ed. 1864,) §§ 369, 371, 374, 382, 385, 400, 468, 470, and cases cited.

II. The petition for divorce being the appropriate and only proceeding for enforcing it, the filing of the petition where it describes specific estates upon which the wife claims the alimony to be charged, gives her an equitable preference upon those estates as against the husband, and all claiming under him ; at least, if not *bona fide* purchasers without notice ; to await their final decree. *Shaefe* v. *Shaefe*, 40 N. H. 516 ; *Vanzant* v. *Vanzant*, 23 Ill. 536 ; *Frahes* v. *Brown*, 2 Blackf. 295. It is like the preference obtained by a creditor upon the equitable estate or assets of his debtor by the filing of his bill. *Edmeston* v. *Lyde*, 1 Paige, 637 ; *Holden* v. *Spader*, 20 Johns. 554.

III. The question of *lis pendens*, as such, does not arise here. 1. That is at best but a substitution of constructive for actual notice ; and when there has been the actual notice, it obviates the necessity of inquiring whether the proceedings have been such as to create the constructive notice or not. *Carrington* v. *Brents*, 1 McLean, C. C. Rep. 167 ; *Williams* v. *Gooch*, 3 Met. (Ky.) 486 ; *Sampson* v. *Ohlegar*, 22 Cal. 200. Here there was *actual* notice to the creditors of the wife's claim upon these estates, and of her suit to enforce it, before they attached. Walter Spencer admits it. Indeed he had been actually served with process. And, as to the other creditors, notice to their attorney, Mr. Congdon, was notice to them. *Haven* v. *Snow*, 14 Pick. 28 ; *Reed's Appeal*, 34 Penn. St. 207 ; *Walker* v. *Ayres*, 1 Clarke, (Iowa,) 449 ; *Williams* v. *Tatnall*, 29 Ill. 553. 2. Were it otherwise, the service on Walter Spencer, the duly constituted attorney in fact of the husband, is, for the purpose of securing the lien, equivalent to service on the husband himself by substitution. 3. But, secondly, this necessity of prior notice only applies to *bona fide* purchasers for value who have actually paid the purchase money. *Dickenson* v. *Tillinghast*, 4 Paige, 215 ; *Donaldson* v. *Bank of Cape Fear*, 1 Dev. Ch. 103 ; *Ronan* v. *Adams*, 1 Sm. & M., 45 ; *Farrell* v. *Jeffreys*, 4 Scam. 887 ; *Jewett* v. *Palmer*, 7 John. Ch. 65 ; *Tenick* v. *Sampson*, 1 Sand. Ch. 244 ; *Griffith* v. *Griffith*, 9 Paige, 315. Attaching creditors are not such, and do not by any means stand upon the same footing. *DePeyster* v. *Goold*, 2 Green, Chan. 474.

IV. Mrs. Spencer's lien was *perfected* here by *final decree, before* the creditors' liens were perfected by *levy*, and upon every principle, therefore, is entitled to priority.

*Payne and Congdon, for respondents :—*

I. All that part of the bill which alleges the original purchase of the homestead lot to have been the complainant's, is wholly irrelevant and immaterial. Before any decree can be made in any way founded upon those allegations, Obadiah B. Spencer, the husband of the complainant, and owner of the fee, must be made a party to the bill. Further, as to him, the matter is as adjudicated, the same allegations and prayer having been made a part of complainant's 'petition for divorce, and having been adjudged adversely by the court. See complainant's original petition and final decree therein.

II. Walter Spencer is not bound by the decree of the court in the divorce petition, by reason of having been served with an injunction as the attorney of Obadiah B. Spencer. He was no party to the petition, except so far as he was attorney for the said Obadiah. His own rights were in no way involved or in question, and the final decree of the court enjoins him only so far as he was such attorney. The repeated refusal of the court in the former hearings, to include him in their injunction, with respect to his own individual rights, are a sufficient answer to any such claim.

III. The respondents are not bound, and their attachments over-ridden by the decree of this court on the divorce petition, upon the principle commonly known as " *lis pendens.*" 1 Because the principle of *lis pendens* does not apply to a petition for alimony. All suits where this principle applies, are for some *definite* right existing in the plaintiff at the time of suit ; it applies exclusively to suits involving the rights or title to property, where that right or title is the direct and not a merely collateral issue. A suit for divorce with alimony, as regards the alimony, is the exact opposite of all this. The claim for alimony is an indefinite claim for future support, which wholly depends upon the future discretion of the court, and the circumstances existing at the time of hearing. It is not a right or title to any par-

ticular property, and is merely a collateral issue in the cause. See *Brightman* v. *Brightman*, 1 R. I. 112 ; *Edmund* v. *Crenshaw*, 1 McCabe, 252 ; *Feigley* v. *Feigley*, 7 Md. 537 ; *Gilmore* v. *Gilmore*, 5 Jones Eq. (N. C.) 284. It has been repeatedly decided, in express terms, that a petition for alimony is not subject to this principle. See *Feigley* v. *Feigley*, 7 Md. 537, and cases there cited. 2. Before the principle of *lis pendens* can apply there must be an actual *suit*; there can be no suit so as to offset the rights of the parties, until some service, in the mode pro· vided by law, has been made upon the defendant named therein. See *Carrington* v. *Brent*, 1 McLean, 167 ; *Hayden* v. *Bucklin*, 9 Paige, Ch. 512 ; *Murray* v. *Ballou*, 1 John, Ch. 566 ; *Miller* v. *Hersham*, Bailey, Ch. 476 ; *Carr* v. *Callaghan*, 3 Litt. 365 ; *Chanden* v. *Magee*, 8 Ala. 570 ; *Diamond* v. *Lawrence*, 37 Penn. S. R. 353 ; *Lyttle* v. *Pope*, 15 B. Mun. 297 ; *Genlaw* v. *McGhee*, 15 Ala. ; *Center* v. *P. & M. Bank*, 22 Ala. 743 ; *Allen* v. *Mandeville*, 26 Miss. 397 ; *Herrington* v. *Herrington*, 27 Miss. (C. Jones) 560 ; *Allen* v. *Case*, 13 Wisc, 621 ; 38 Barb. (S. C.) 641. 3. The principle of *lis pendens* applies particularly to *purchasers* intermeddling unnecessarily in the subject matter of a pending suit; against whom the full rigor of the principle may properly be enforced. But creditors seeking to satisfy *bona fide* debts from the only property of the debtor within their reach, stand in a very different position. They are a favored class, both at law and in equity, and are entitled to all possible presumptions of law and evidence in their favor, and should not be subjected to the operation of an arbitrary principle like that of *lis pendens*, ex· cept upon the clearest evidence in fact, and the most decisive authority in law.

IV. The defendants, Allen and Barber, as appears from their answers, and the argument on file in the case, attached, in good faith, and without any knowledge of the pendency, or even existence, of complainant's petition for divorce. Under these circumstances their attachments will be recognized and protect· ed by this court. See *Hayden* v. *Bucklin*, 9 Paige, Ch. 572 ; *Frakers* v. *Browne*, 2 Blackf. 295, and the cases there cited.

V. Upon principle, and under the law and practice of this

state, the lien for alimony attaches upon the decree of the court giving the time, and not from the filing of the petition; and so, in this case, is subsequent and subordinate to the attachments.

VI.   By the very terms of the final decree in the divorce case, it only became a lien from the time of its rendition.   *See decree.*

VII.   The interlocutory decree rendered at the March term, 1866, is not binding upon the respondents, or superior to their attachments.   1. Because it was rendered subsequent to their attachments, and is subordinate to them for the reasons already given.   2. It was null and void, having been rendered before the court had acquired any jurisdiction over the defendants. 3. It was null, having been rendered without any notice, actual or constructive, to the defendants in the cause.   See Rev. Stat. Chap. 138, §§ 16 and 18; Bishop on Div. 2d vol. § 201.

VIII.   If the fullest effect possible, as against these respondents, be given to the decree of this court, upon which the complainant rests her claim, an attachable interest still remained in Obadiah B. Spencer.   He is still the owner of the fee.   That interest, at least, the respondents have attached, and have a right to sell, consequently no permanent injunction can be granted against them.

IX.   These respondents appear here as *bona fide* creditors, attempting, in good faith, to collect honest debts which the complainant has had every possible opportunity to contest.   Under these circumstances, the attempts made by this bill to transfer the property of Obadiah B. Spencer, and which is the natural and proper fund for the payment of his debts, from that proper and lawful destination, in order to provide for the *future* support of his wife and children, is against the *whole* policy of the law, and certainly deserves no special favor at the hands of this court. Bishop on Div. 2d vol., § 453 ; *McGhee* v. *McGhee*, 2 Sneed. 221.

DURFEE, J.   The plaintiff filed her principal and ancillary petitions against her husband, Obadiah B. Spencer, and his attorney in fact, Walter Spencer, on the 13th of March, 1866, and, on the same day, at half-past one o'clock, P. M., service of the latter petition was made on the said Walter Spencer.   Sub-

sequently, on the same day, the attachments in behalf of the defendants, Walter Spencer, Thomas P. Allen and Allen & Barber, were made on the real estates of the said Obadiah B. Spencer described or designated in the petitions. The said Obadiah B. Spencer was at this time absent from the state in one of the Sandwich Islands, and has had no service on him of either of the petitions, except, subsequently to the attachments, by letter mailed to him by order of the court, and by publication. It is admitted that Walter Spencer had actual notice of the filing of the principal petition at the time of the attachment in his behalf, and it is claimed that the other said defendants had constructive notice thereof, the attorney employed by said Walter Spencer, who confessedly had actual notice, being likewise employed by them.

On the day following the attachments, the plaintiff obtained a decree in her ancillary petition, enjoining her husband and the defendant, Walter Spencer, until further order, from obstructing or encumbering the described estates and property, and for an allowance of $150, which was made a lien or charge upon the real estates.

Afterwards, the plaintiff obtained, in her principal petition, a decree, which was entered as of the last day of the March term (March 15, 1867,) of the Supreme Court for the County of Kent, divorcing her from bed, board, and future cohabitation from her said husband, &c., giving her the custody of her children, and securing for her use one of the real estates, and charging that, and the other estate described in the petition, with the annual payment of fifty dollars decreed to her for her own use, and two hundred and fifty dollars for the support and maintenance of her children, and also, perhaps, with the allowance of one hundred and fifty dollars, granted in her ancillary petition.

The defendants obtained judgment in the several suits in which said attachments were made, at the said March term of the Supreme Court, and, on the 22d day of March, 1867, caused their writs of execution to be levied on the estates attached.

The plaintiff asks, in the present suit, to have the defendants enjoined from proceeding further under their executions, and

to have the liens, created in her favor by the decrees entered in her petitions, declared to have precedence of said attachments and levies, or each of them.

In considering this case, we propose first to consider it as if the plaintiffs had never filed any ancillary petition, and afterwards, if it becomes necessary, to consider what effect, if any, the ancillary petition, or the decree thereon, ought to have upon our decision. The case so considered presents the question whether the defendants—supposing them to have had, or to have been affected as claimed with notice of, the principal petition—are so affected thereby that their attachments must be subordinated to the decree entered in said petition in favor of the plaintiff.

We find it difficult to answer this question favorably to the plaintiff, for the reason that, excepting her inchoate right of dower, her petition did not disclose that she had any subsisting equity or interest in the estates therein described, unless the claim—which we are not now to consider—that one of the estates was purchased with her money, &c., can be regarded as such; for, though she and her children may have had a right of support from her husband, this was not a right inherent in any specific property of her husband.

The petition showed, among other things, a desire on her part, for certain causes therein alleged, to be divorced from her husband, to have the custody of her children, and to have certain portions of his property assigned or secured for her use and maintenance, or charged for her alimony and their support and education, and of the filing of her petition for the purpose of making this desire effectual. Such a notice would not, in our opinion, make it unconscionable for a creditor of her husband to desire to secure the same property for the payment of his claims, nor inequitable for him to make attachments thereof for the purpose of so securing the same. Our law, except to the extent of the wife's right of dower, does not accord the right of wife and child to support out of the property of the husband or father, any preference over the right of the creditor to payment, but rather the reverse.

The plaintiff likens her petition for divorce and alimony to a

suit in equity brought by a judgment creditor after execution issued and return of *nulla bona,* to obtain judgment out of the equitable assets of the debtor. There are some New York cases of this class which contain expressions to the effect that the creditor by the *filing* of his bill acquires a lien on the property therein described. *Corning* v. *White,* 2 Paige, Ch. 567 ; *Beck* v. *Burdett,* 1 Ib. 305 ; *Edmeston* v. *Lyde,* Ib. 637. But even if the doctrine is that the lien in this class of cases begins with the filing of the bill, before service, and does so independently of any statute of the state, we are still not satisfied that the cases would furnish a sufficient precedent for a similar view in regard to a petition for divorce and alimony. The creditor proceeds upon an *adjudicated claim* for the satisfaction of the same, in default of legal assets, out of the equitable assets of his debtor ; whereas, in a petition for divorce and alimony, with a prayer that such alimony may be made a lien upon the described property, it is uncertain whether any alimony will ever be allowed, or, if allowed, to what amount it will be allowed,—the whole matter being in fact unadjudicated. We think it would be going further than the cases cited warrant us in going, to hold that the mere filing of such a petition creates a lien for the purposes thereof, upon the property described.

Strictly speaking, the case does not involve the doctrine of *lis pendens,* for until service there is no *lis pendens,* and here there was no service of the principal petition previous to the attachments. *Hayden* v. *Bucklin,* 9 Paige, Ch. 512 ; *Anon.* 1 Vernon, 318 ; *Murray* v. *Ballou,* 1 Johns. Ch. 566 ; *Diamond* v. *Lawrence County,* 37 Penn. 353 ; *Herrington* v. *Herrington,* 27 Misso. 560; *Jackson* v. *Dickenson,* 15 Johns. 309 ; 2 Sugd. on Vend. 1045. If the principal petition had been duly served previous to the attachments, the case would then have presented the question whether the property described in the petition was not by such service put in litigation, or brought under jurisdiction of the court in such a manner as to be bound to abide the decree of the court, in the petition, the rights of subsequently attaching creditors being subordinated thereto. This is a question which we do not deem it necessary in the present case to decide. It

is said that the rule of *lis pendens* is at best but a substitution of constructive for actual notice, and that when there has been actual notice it obviates the necessity of inquiring whether the proceedings have been such as to create the constructive notice or not. This argument assumes, that the rule of *lis pendens* rests upon a presumption of notice. This appears to be the doctrine of some of the cases. There are other cases which rest, or seem to rest, the rule, upon the ground that the property described having by the service been put in litigation, will be held to abide the event of the suit, public policy requiring that no alienation made or lien acquired, *pendente lite*, shall have an effect to defeat or embarrass the litigation. *Murray* v. *Lylburn*, 2 Johns. Ch. 441, 445. *Hopkins* v. *Melasen*, 4 Cowen, 667, 679. 2 Sugd. on Vend. 1045, note 2, citing *Newman* v. *Chapman*, 2 Randolph, 293 ; 1 Story's Eq. Jur. § 406 ; *Bellamy* v. *Sabine*, 1 Deg. & J. 566 ; *Exparte Thornton*, Law Rep. 2 Ch. Appeal Cases, 171. We are of the opinion that the rule of *lis pendens*, if applicable at all to a simple petition for divorce and alimony, &c., where the property sought to be charged is described, is only applicable because it rests upon the latter ground ; and, therefore, that notice of the filing of the petition to third persons who are creditors of the respondent's husband, is not, as to such persons, equivalent to service, so as to postpone their *bona fide* attachments of the property described. This might be the effect of such notice in the case of a suit brought to establish or enforce a right or equity subsisting previous to the suit, in the property therein described ; or in a case, if any such there be, where a lien begins with the filing before service, but not the effect, we think, in the case of a suit which, like a petition for divorce and alimony, is brought to create or acquire a right or equity in such property as a consequence of its successful prosecution,—there being no fraud or collusion to affect the validity of the attachments.

The plaintiff also contends, that she is entitled to precedence, because her decree was entered as of a day prior to the levies made by the defendants on their executions. But we think we must look to the attachments, and not to the levies, to determine the rights of the defendants.

We, therefore, do not find that the plaintiff is entitled, by reason of her principal petition, or of the decree entered therein, to be declared to have a precedence over the said allotting creditors, or to have them enjoined from selling the property attached upon their executions.

We come next to inquire, whether the ancillary petition, or the decree entered therein, entitles the plaintiff to the relief which she seeks.

There was a service of the ancillary petition made previous to the attachments, not, however, upon Obadiah B. Spencer, but upon the defendant, Walter Spencer, his attorney, in fact; we think, however, that the fact that the service was so made, previous to the attachments, cannot have any effect to defeat, or postpone these attachments. One purpose of this petition was, to have Obadiah B. Spencer and Walter Spencer, his attorney in fact, enjoined from alienating or encumbering the property described in the principal petition, until the hearing thereon. The language used to effect this purpose, in the decree which was entered in the ancillary petition, was somewhat general; but we think it must be considered, in so far as it affected Walter Spencer, to have affected him simply as the attorney, in fact, of Obadiah B. Spencer, and that it would not prevent him, as a creditor of Obadiah B. Spencer, from pursuing any remedy which he was previously entitled to pursue as such. Neither the petition, ad interim, for the injunction to restrain Obadiah B. Spencer and Walter B. Spencer, his attorney in fact, from alienating or encumbering the estates; nor the decree awarding the injunction, would, in our opinion, be construed to prevent the creditors of Obadiah B. Spencer from attaching his estates for the security of their claims; that being a right accruing to the creditors under the law, and not, in the absence of collusion, by any action of the debtor or his attorney, and being also a right which would remain to the creditor, as such, though, as attorney, he had been enjoined.

Another purpose of the ancillary petition was, to obtain for the plaintiff an ad interim allowance out of the estate of her husband, and in the decree such an allowance, to the extent of

$150, was granted and made a lien or charge on the real estates described. It thus appears, that the court did, for this purpose, assume a jurisdiction over these estates previously to any service upon their owner. And, yet, without such service, we do not see how we can allow the ancillary petition in respect of this prayer for an *ad interim* allowance, any more effect than we have allowed the principal petition; or the decree therein, for such an allowance, any effect which we refuse to the decree in the principal petition, the notice, if any, of either petition, being equally ineffectual to bind the consciences of the attaching creditors. We therefore feel constrained to hold, that the ancillary petition and the decree therein, can have no effect to defeat or subordinate the attachments for the benefit of the plaintiff, even to the extent of the *ad interim* allowance, if, indeed, that allowance is not to be regarded as invalid for want of service on Obadiah B. Spencer, in so far as it depends on the decree in the ancillary petition.

In the view which we have taken of this case, we have not found it necessary to decide, whether or not, the defendants, Thomas P. Allen, and Allen & Barber, were, through their attorney, affected with notice of the plaintiff's petitions, or their contents, for, assuming—as in our view we may assume, without detriment to them—that they were so affected, we have, nevertheless, come to the conclusion that we cannot, for any reason, as yet given by the plaintiff, grant her the relief which she asks; and that consequently we must dismiss her bill, unless she wishes, and is entitled to be further heard, upon some question reserved in the agreement between the counsel.

*Bill dismissed.*