PAUL R. PICERNE, *Rec. et al. vs.* WILLIAM S. REDD *et al.*.

JUNE 21, 1946.

MOTION FOR REARGUMENT DENIED

JULY 17, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, J.J.

CONDON, J.   This is a bill in equity to set aside a sale of certain personal property which was made by Israel Wiesel while he was the respondent in a divorce suit and under injunction therein not to convey such property. The bill also prayed that the purchaser, William S. Redd and his servants, John A. McIlhenny and G. Brandon Donahue, respondents, be ordered to turn over said property to complainant Paul R. Picerne, who was appointed by the superior court in the divorce proceeding as receiver of Wiesel's personal property. The cause was heard on bill, answer, replication and proof and thereafter a decree granting the relief prayed for was entered in the superior court. From that decree respondents appealed to this court.

The grounds of the decree invalidating the sale and ordering the respondents to turn over the property to the receiver are that William S. Redd was not a *bona fide* purchaser for value without notice of the injunction and that, through his servants and agents, McIlhenny and Donahue, he had knowledge and notice of the injunction. In the trial justice's

decision upon which the decree is based it is also stated that the doctrine of *lis pendens* applied to the case and would "bind the respondents without reference to the question of their knowledge." The trial justice observed, however, that there was no need to put his decision on that ground, as he expressly found that the purchaser did not purchase *bona fide* without notice of the injunction. Complainants support the decree on all three grounds and also on the grounds that the sale was void under the "Sales in Bulk Act", general laws 1938, chapter 483, and also under G. L. 1938, chap. 482, against fraudulent conveyances. On the latter statutory grounds the trial justice expressly found against the complainants.

Respondents contend that Redd purchased the property for a valuable and adequate consideration; that he had no knowledge of the pendency of the divorce petition; that he was not bound by the injunction issued solely against Israel Wiesel in that proceeding; and that, in any event, his right to purchase Wiesel's personal property was not affected by the pendency of the divorce petition against Wiesel, as the doctrine of *lis pendens* was not applicable in the circumstances.

It appears from the record that the circumstances, in so far as they are material here, were these: On February 24, 1944 Bessie Wiesel filed a petition for divorce from bed and board against Israel Wiesel. She filed a supplemental petition, on June 26, 1944, for a lien on his real estate in the town of East Providence and on his personal property situated at 232 Broad street in Providence, which he held under the trade name of Ace Amusement Company. In that petition she also prayed that he be enjoined from conveying or encumbering such property and for the appointment of a receiver. On June 27, 1944 she filed a "Notice of Pendency of Supplemental Petition" in the office of the recorder of deeds in Providence.

After a hearing on that petition in the superior court on July 7, 1944 the following order was entered: "That said

respondent Wiesel be and he is hereby enjoined from disposing of the business to him belonging, and the assets thereof, situated at 232 Broad street, Providence, Rhode Island, and known as the Ace Amusement Company, except in the ordinary course of trade and in the same sense which is applied to the Sales in Bulk Act of Rhode Island, so called, to wit: Chapter 483 of the General Laws of 1938." The prayer for a receiver was expressly denied. Sometime thereafter in August, 1944 Wiesel resumed negotiations, which he had initiated in February, 1943, with respondent Redd looking toward the sale of the Ace Amusement Company. Finally, on September 28, 1944, in Boston, Massachusetts, he sold the business and assets of the company for $23,500 to respondent Redd. In consummation of such sale the parties executed two documents, one called a purchase agreement and the other a sale agreement, and these documents were delivered on September 28, 1944, the day of their date, when Wiesel received at Brown Brothers Harriman & Co. bank in Boston the purchase price, as suggested by him, in United States currency, mostly in $1000 bills.

On October 2, 1944 respondent Donahue, on behalf of Redd, took actual possession of the above-mentioned property in Providence. None of the respondents knew at that time that Wiesel had been sued by his wife for a divorce from bed and board and had been enjoined from conveying or encumbering his property. On October 6, 1944, on the petition of Bessie Wiesel in the divorce proceedings, complainant Picerne was appointed receiver of Israel Wiesel's personal property. He thereupon demanded that the respondents turn over to him, in his capacity as receiver, all of the assets of the Ace Amusement Company. This they declined to do on the ground that they had no property belonging to Israel Wiesel, since respondent Redd had *bona fide* and without notice of either the divorce suit or the injunction purchased such property for a valuable consideration. Thereafter, on October 18, 1944, Bessie Wiesel and Picerne filed

the instant bill. Final decree thereon was entered April 20, 1945.

On May 18, 1945 the superior court granted Bessie Wiesel's motion to amend the petition for divorce from bed and board to one for absolute divorce. On July 3, 1945 a final decree of divorce was entered in her favor in which she was awarded $75 a week "for the support of herself and minor child, said payments to be made as alimony."

It further appears that the only evidence of the negotiations which took place between Redd and Israel Wiesel for the sale of the assets of the Ace Amusement Company comes from the respondents who were called as witnesses by the complainants. Their testimony concerning those negotiations is undisputed. In so far as proof of the lack of good faith of Redd in the sale of those assets to him and proof that he or his servants and agents, McIlhenny and Donahue, had knowledge of the divorce petition and the injuction is concerned, complainants are forced to rely solely on that testimony and inferences from certain checks, letters and other documents in evidence that come from respondent Redd's office files. Israel Wiesel was not a party to the equity suit and did not testify.

Redd categorically denied on the witness stand that he knew that there was a petition for divorce pending against Wiesel or that Wiesel had been enjoined in that proceeding from conveying or encumbering his assets situated at 232 Broad street, Providence. McIlhenny and Donahue also testified that they had no knowledge of such legal proceedings against Wiesel. Complainants offered no counter testimony thereto but contended, from the evidence of the negotiations leading up to the sale, of the times they took place and the manner in which the sale was finally consummated, that an inference could be drawn that Redd knew of the litigious predicament of Wiesel when the sale was finally closed on September 28, 1944. They also relied on a provision in the printed sale agreement as raising an inference that Redd knew that there was an element of hazard in buying from

Wiesel at that time. That provision is as follows: "It is agreed that said party shall take possession of all said property on the 28th day of September, 1944, and after the said 28th day of Sept. 1944, all risk for loss, damage and theft, and all other risks of every kind and character, shall be assumed by said second party."

At the conclusion of the hearing in the superior court, the trial justice reserved decision and gave the parties leave to file briefs on certain points of law raised by complainants, namely, whether the sale violated the "Sales in Bulk Act", G. L. 1938, chap. 483, the statute against fraudulent conveyances, G. L. 1938, chap. 482, or was subject to the rule of *lis pendens.* After briefs had been filed he decided in favor of the complainants and incorporated his decision in a rescript. Therein he discussed the above points of law and held that neither chap. 482 nor chap. 483 applied to the facts in evidence. He further held that the rule of *lis pendens* was applicable but declined to rest his decision on that ground because he expressly found that Redd was not a *bona fide* purchaser for value without notice of the injunction. He based that finding largely upon the complainants' theory that from the travel of the negotiations it was reasonable to infer that Redd had knowledge of the injunction. He also relied in part upon the provision of the printed sale agreement, hereinbefore quoted, and inferred therefrom "that one of the risks covered by this agreement would be just such a risk as is involved in this case."

In order to determine the correctness of the trial justice's finding that Redd had knowledge and notice of the injunction we have carefully read the transcript and have scrutinized all of the exhibits. If there was a conflict in the evidence on that matter, his finding should not be disturbed unless clearly wrong. On the other hand, if the evidence is undisputed and his finding rests upon inferences drawn therefrom, we are in as good a position as the trial justice to draw such inferences. *Matteson* v. *Sweet & Son, Inc.,* 58 R. I. 411. In our opinion the evidence is substantially undis-

puted. Respondents, in testifying, denied knowledge of the injunction and the divorce petition. They were neither impeached nor contradicted. The trial justice apparently rejected their testimony and drew inferences contrary thereto from the exhibits in the case.

We find no evidence that justifies such inferences. The most that the evidence shows is that in a few minor particulars the transaction with Wiesel did not follow the normal routine of Redd's business practice in such matters. Such irregularities, however, are a far cry from evidence of bad faith or guilty knowledge on Redd's part. Nor does the provision in the sale agreement upon which the trial justice relied furnish any stronger foundation for an inference that Redd must have known of the injunction and the consequent hazard of taking title from Wiesel. Such a conclusion is, in our opinion, not a legal inference but mere conjecture.

For our part it is inconceivable that a reputable business man, as Redd appears to be from the record, would pay $23,500 for property which he knew the seller had no right, or at most a doubtful right, to convey, and that he would at the same time assure such seller that he, the buyer, would assume such risk. Only on the theory that the price was grossly inadequate or that the buyer was in conspiracy with the seller can it be reasonably supposed that such a transaction would take place. Here the uncontradicted evidence is that the price was adequate. Moreover, there is not a scintilla of evidence that Redd combined or confederated with Wiesel in any manner to hinder or defeat the orders of the superior court. Neither the cash transaction which was the final consummation of the sale nor the voluntary cancellation by Redd, at the request of Wiesel, of the first attempted sale of this property in August, which has been satisfactorily explained by respondents, furnishes the basis for a legal inference that Redd either had knowledge or was charged with notice of the litigation in which Wiesel was involved. We are, therefore, of the opinion that the trial justice erred in

finding that Redd had knowledge and notice of the injunction.

In view of the above conclusion on our part we find that Redd was not bound by the injunction in his dealings with Wiesel. The law is clear that where one not a party, or not in privity with a party, to a cause in equity has neither knowledge nor notice of an injunction therein he is not bound by it. *Southard* v. *Latham,* 18 N. M. 503, 50 L. R. A., N. S., 871; Am. Jur. 505, §331.

There remains, however, the question whether the decision of the trial justice can still be supported on the ground of *lis pendens.* That doctrine has been summed up in these words: "that he who purchases property pending a suit in which the title to it is involved, takes it subject to the judgment or decree that may be passed in such suit against the person from whom he purchases." *Brightman* v. *Brightman,* 1 R. I. 112. This court said in that case that the doctrine was based on motives of public policy and therefore lack of knowledge or notice of the pending suit was of no consequence since "The law infers that all persons have notice of the proceedings of courts of record."

The doctrine is an ancient one but the courts are not in agreement as to its application to suits other than those involving title to real property. *Murray* v. *Ballou,* 1 Johns. Ch. 566. In England it has been held to be inapplicable to suits involving personal property other than chattel interests in land. *Wigram* v. *Buckley,* 3 Ch. Div. (L.R.) 483 (1894). In the light of the origin of the doctrine in the 12th rule of Lord Bacon and the analogy of that rule to the rule at common law in a real action, *Winston* v. *Westfeldt,* 22 Ala. 760, there is much to be said in favor of this view. However, the great weight of authority in the United States is to the effect that, excepting money and bank bills, negotiable paper transferred before maturity and articles of ordinary commerce sold in the normal way, the doctrine is applicable in the same way to personal property as it is to real property. 34 Am. Jur. 375, §17. In this state, while the doc-

trine does not appear to have been directly controverted as to its application to suits other than those affecting title to real property, this court seems to incline to the majority rule. *Gardner* v. *Peckham,* 13 R. I. 102. But it was there said that the doctrine is not to be *extended* without strict necessity as it is *not a favorite of the courts.* And it was also expressly stated that the property involved in the suit must be specifically described and the suit prosecuted with diligence. Apparently the doctrine is not applicable in favor of a complainant who fails to prosecute his suit within a reasonable time. *Boice* v. *Conover,* 69 N. J. Eq. 580.

If the suit before us raised only the question whether such personal property as is herein involved was subject to the doctrine of *lis pendens* we should perhaps be compelled to decide it; but, anterior to such question, there is another question raised here which, in our view, makes it unnecessary to so decide. That question is whether or not the doctrine of *lis pendens* is applicable to a petition for divorce from bed and board and allowance for separate maintenance wherein a supplemental petition was filed describing specifically respondent's personal estate and praying that a lien be charged thereon. As far as counsel have advised us and as far as we have been able to find, there have been brought to this court for determination only two divorce cases in which it was sought to apply the doctrine of *lis pendens* and in each case this court refused to apply the doctrine. *Brightman* v. *Brightman, supra; Spencer* v. *Spencer,* 9 R. I. 150.

In the latter case the court did not reach the precise question which we have here, because the rights of prior attaching creditors, before service of the petition, were involved and, in any event, the petition was for absolute divorce and alimony and not a mere bed and board petition. The *Brightman* case also involved a petition for absolute divorce and alimony but otherwise the situation therein presented to the court was analogous to that here, except that there was no supplemental petition specifically describing the husband's property and seeking to have it charged with a lien.

Were it not for that variance we should be of the opinion that the instant case is governed by the *Brightman* case. The court there held that the rule of *lis pendens* was inapplicable and said: "The prayer of the complainant's petition was for divorce and for alimony out of her husband's estate. It did not affect the title to his real estate, or necessarily seek to put any incumbrance on it. Alimony is to be granted out of the personal or real estate, and not necessarily a charge on either."

Does the filing of the supplemental petition specifically describing the personalty of the husband and praying for a lien thereon make any difference in the instant case? We think not. In the first place there is no statutory authority for charging such a lien in a bed and board petition; and furthermore it does not appear from the record before us that the superior court granted that prayer of the petition on July 7, 1944 when it enjoined the respondent Wiesel from conveying or encumbering such personal property; and even if it did, and it had the authority so to do, it would not, in our opinion, be equivalent to the assignment of an allowance for maintenance out of this particular property. The prayer of the supplemental petition was not to that effect, and therefore it does not meet the supposed instance given in the *Brightman* case where the court said: "Had the prayer in this case been for alimony to be assigned her out of this particular farm, the case would have somewhat resembled some of the cases in the books, where the rule has been applied."

In the instant case the amendment of the divorce petition to one for absolute divorce, which has been brought to our attention by counsel in their briefs, occurred after the superior court had entered its final decree herein and of course is of no avail to the complainants. We must consider on this appeal only what was before the superior court when it entered its final decree. When, if ever, the rule of *lis pendens* can be made to apply to a divorce proceeding is a matter of serious doubt. This is apparent in the manner in which

this court discussed the question in the *Brightman* and *Spencer* cases. It has been stated elsewhere that this rule "is applicable only where there is specific property which will necessarily be affected by the termination of the suit. So far as a divorce proceeding has for its object the allowance of alimony, it is in personam and is not directed against any specific part of the husband's estate, real or personal. . . . Accordingly, it is generally held that the doctrine of lis pendens is inapplicable in a proceeding for the allowance of alimony." 17 Am. Jur. 431, §529, and cases cited in the footnote.

Whatever may be the law which would govern such a special instance as the one supposed in the *Brightman* case, we are of the opinion that the instant case does not fall in that class and therefore is not within the rule of *lis pendens*. We may add that in a case such as the divorce case which is involved here, there is a way to protect the interests of the wife and children, if there is serious danger of the husband dissipating his property or conveying or concealing it pending the divorce proceedings, and that is by injunction and the appointment of a receiver, as was expressly approved in *Warren* v. *Warren*, 36 R. I. 167. It is true that the complainant Bessie Wiesel sought to do that in her divorce case and her first application for a receiver was denied. As events proved, that was unfortunate for her but that, of course, is no reason why a *bona fide* purchaser for value of her husband's property should be made to suffer.

It is significant to note that the facts in the *Warren* case furnished an even stronger basis than those in the instant case for the application of the doctrine of *lis pendens*, if complainants' theory here is correct; and yet the question was not raised in that case notwithstanding that able and experienced counsel appeared for the petitioner and that respondent was possessed of real and personal estate of great value. It is of further interest to note that this court, in rejecting the respondent New England Land Company's contention that it was improperly made a party in that di-

vorce suit, said, at page 186, "We are of the opinion that it was not only proper, but necessary that this Company should be summoned in as it was; it was alleged to be a fraudulent grantee of respondent's real estate with full knowledge of the intended fraud; if these allegations were true it was a mere naked trustee of said Warren, holding the legal title, and a participant in his fraudulent purposes. It was highly appropriate that it should be before the court to protect itself from these charges if they were not true, and to be subjected to the jurisdiction and decree of the court in the event that they were proved to be true." Of course, if *lis pendens* were applicable to divorce, that conclusion would not necessarily follow. In *Sprague* v. *Stevens*, 37 R. I. 1, this court held that those who had actual notice of the pending proceedings at the time of the conveyance to them were not necessary parties but that they took *cum onere* and were bound by the decree.

There are only two other points that we must mention before we conclude this opinion. We agree with the findings of the trial justice that neither chap. 482 nor chap. 483, G. L. 1938, is applicable to the instant case. And we are also of the opinion that the filing of "Notice of Pendency of Supplemental Petition" in the office of the recorder of deeds in Providence is a nullity as far as its effect on the conveyance by Wiesel of his personal property situated at 232 Broad street, Providence, is concerned. Our statute, G. L. 1938, chap. 439, providing for the filing of such a notice, applies only to real estate, merely modifies the common-law rule of *lis pendens* in such cases and cannot be employed to serve the purpose of an equitable attachment. *Campbell* v. *Metcalf,* 20 R. I. 352. In the case at bar it would seem that complainants, after their first application for a receiver was denied, sought to use that statute as a means of obtaining the benefit of such an attachment in somewhat the same manner that the complainant in the *Campbell* case did after her motion for an equitable attachment was discouraged by the trial court and not pressed by her.

The respondents' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for the entry of a decree denying and dismissing the bill of complaint.

### ON REARGUMENT

PER CURIAM.   After our opinion was filed in the above-entitled cause, complainants requested permission to file a motion for reargument, and such permission was duly granted.   The reasons advanced in support of such motion, when analyzed, disclose that the opinion of complainants' counsel differs from that of the court as to the proper effect to be given certain evidence and as to the law applicable thereto, particularly as to *lis pendens* in a divorce case of this kind.   These questions were fully argued by counsel and were considered by us in reaching our opinion.   We are of the opinion therefore that no ground is shown for granting the motion.

Motion denied.