## BOARD OF PURIFICATION OF WATERS vs. TOWN OF EAST PROVIDENCE.

### JUNE 25, 1926.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1) *Pollution of Waters.*

Under G. L. 1923, cap. 125, either joint or separate pollution of a stream may be stopped by the Board of Purification of Waters.

(2) *Constitutional Law. Police Power. Pollution of Waters.*

G. L. 1923, cap. 125, "Of the pollution of the waters of the State," is clearly within the police power of the State in protecting public health. The chapter

relates to anticipated future not to past action and is not obnoxious to Const. R. I. Art. I, sec. 12 or Const. U. S. Art. I, sec. 9, in being *ex post facto*.

*(3)   Constitutional Law.   Pollution of Waters.*

G. L. 1923, cap. 125, "Of the pollution of the waters of the State," is not obnoxious to Cons. R. I., Art. I, sec. 15, in depriving a town of its right to trial by jury, as the town never had such a right.   Said chapter is not obnoxious to Cons. R. I. Art. I, sec. 16, in taking private property for public use without just compensation, nor to the fourteenth amendment of the U. S. Constitution in depriving a town of the equal protection of the law;  nor to Cons. R. I. Art. I, sec. 2, in imposing upon a town an unfair and unequal burden;  nor to Cons. R. I. Art. X, sec. 1, in bestowing judicial power nor does it deprive a town of the right to a judicial inquiry before taking away its vested rights.

*(4)   Constitutional Law.   Eminent Domain.   Pollution of Waters.*

G. L. 1923, cap. 125, "Of the pollution of the waters of the State," does not relate to the exercise of the right of eminent doman, for there is no taking of private property involved, since the right to pollute public waters and endanger public health cannot be acquired as a private property right.

*(5)   Constitutional Law.   Police Power.   Pollution of Waters.*

G. L. 1923, cap. 125, "Of the pollution of the waters of the State," relates to the exercise of police power and neither a municipal corporation nor an individual can claim that the carrying of the act into effect imposes a greater cost upon it or him than upon some one else if the act can be fairly considered to be in protection of the public health and welfare.

*(6)   Constitutional Law.   Difficulty of Enforcement.*

Difficulty of enforcement of an act is not a valid  argument for unconstitutionality.

*(7)   Constitutional Law.   Pollution of Waters.*

G. L. 1923, cap. 125, "Of the pollution of the waters of the State," does not deprive a town of the equal protection of the law nor unfairly distribute the burdens of the State, because the Board of Purification of Waters has acted against one town and not taken similar action against other towns.

*(8)   Pollution of Waters.*

Under G. L. 1923, cap. 125, "Of the pollution of the waters of the State," a town's percentage of pollution is not important, in justifying an order against it.

APPEAL from order of Board of Purification of Waters. Heard and appeal dismissed.

BARROWS J.   This is an appeal from an order of the Board of Purification of Waters made on April 14, 1926, after due notice and hearing.

Action was commenced by the Board of its own motion, under General Laws, 1923, Chapter 125, Section 13. The order directs respondent "to adopt, use and operate some practicable and reasonably available system or means to prevent" pollution of the Seekonk river by the emptying therein of raw sewage. It further requires that "such system or means to prevent such pollution shall be adopted and the operation thereof shall be commenced by said Town of East Providence on or before the first day of July in the year 1927". Another paragraph of the order requires the submission to the Board, on or before the first day of September, 1926, of "a plan or statement describing the system or means which said Town of East Providence proposes to adopt". The order followed certain written findings of fact, among which was the undisputed one that the town of East Providence daily deposited in the Seekonk river, near Washington Bridge and at the foot of Mauran avenue, 270,000 gallons of raw sewage.

Deposits of large quantities of sewage were made up stream in the Blackstone river by the cities of Pawtucket and Central Falls. These deposits somewhat polluted the Seekonk and the city of Providence poured some sewage directly into said river.

(1) The evidence is undisputed that such deposits as a whole polluted the stream and that the deposit from East Providence alone, apart from the others, would constitute a pollution of the waters. Either joint or separate pollution may be stopped by the Board under Chapter 125.

Chapter 125 was enacted in 1920 creating the Board and defining its duties. The act was an exercise of the State's police power. As early as 1921 the Board called the authorities of East Providence and the above-named cities into conference in an attempt to stop pollution of public waters by the dumping of city and town sewage. From then on, until the present proceeding, the record shows on the part of East Providence an admission of the desirability and ultimate necessity of treating its sewage to purify the

effluent into the Seekonk river, the appointment of a committee to examine into methods of so doing, the report of such committee to the financial town meeting and its discharge, the securing from the legislature of authority to borrow money on a bond issue and to condemn land and year after year failure by the financial town meeting to appropriate money to carry out the proposals of the town solicitor, town council, budget committee or sewage disposal committee. The Board has repeatedly called into conference the town officials of East Providence, who could only say that the financial town meeting had not acted and that other cities and towns were similarly polluting public waters. Under such circumstances the Board, seeing no prospect of immediate voluntary action by the town, considered it necessary to take the present proceeding and insist upon definite action.

At the hearings before the Board no attempt was made to dispute the testimony of the experts who had examined conditions for the Board and reported unsanitary pollution of the river. On this appeal appellant attempts to raise two general types of questions: A those relating to the constitutionality of Chapter 125 in creating and giving powers to the Board; B, those relating to the alleged unreasonableness of the order, even if Chapter 125 be constitutional.

The Town's brief concedes that its constitutional points practically have been passed upon adversely in the opinions *In re Metropolitan Park Loan*, 34 R. I. 191 and *Horton* v. *Old Colony Bill Posting Co.*, 36 R. I. 507. The town raises questions of constitutionality merely as a basis for possible further appeal in the event that the constitutionality of the law is upheld by this court.

(A) Chapter 125 is too clearly within the police power of the state in protecting public health to require extended discussion. "Sewage" in Chapter 125 is defined both as human and animal excremental liquid or substance injurious to health and comfort or injuriously affecting the propagation of fish or shellfish or injuriously affecting the flavor or (2) taste or food value of such fish. The only claim of uncon-

stitutionality outside of those mentioned in the two cases above cited is that the law is *ex post facto* and violative of the Constitution of Rhode Island, Art. I, Sec. 12 and of the Constitution of the United States, Art. I, Sec. 9.   Appellant misconceives the nature of an *ex post facto* law.   There is nothing in Chapter 125 or its administrative provisions to make it objectionable as *ex post facto*.   It makes criminal no act which was innocent when done nor does it alter punishment after doing a criminal act, nor alter the rules of evidence.   *Calder* v. *Bull*, 3 Dallas 386.   In the application of Chapter 125 to the town in this case, the order charges no crime.   It is to discontinue practices damaging to public health.   It relates to anticipated future not to past action.

(3)   The answer to a claim that the town is deprived of its right to a trial by jury violating Rhode Island Constitution, Art. I, Sec. 15. is that it never had such a right.   See Rhode Island cases cited in *Horton* v. *Old Colony Bill Posting Co.*, *supra*, 36 R. I. at 555 and 556.   The two Rhode Island cases cited also have adequately disposed of appellant's contention that the order requires the town to spend money and takes private property for public use without just compensation, violative of Rhode Island Constitution, Art. I, Sec. 16; that it deprives the town of equal protection of the law under the Fourteenth Amendment of the United States Constitution; that it imposes upon the town an unfair and unequal burden violative of Rhode Island Constitution, Art. I, Sec. 2; that it deprives appellant of the right to a judicial inquiry before taking away its vested rights or that it bestows judicial power contrary to Art. X, Sec. 1 of the Rhode Island Constitution.   It may be added that Chapter 125 does not relate to the exercise of the right of

(4)   eminent domain.   Eminent domain applies only to a taking and not a regulation of use of private property.   There is sometimes a nice line of distinction between the two but in this instance the distinction is plain.   There is no taking of private property involved.   The right to pollute public waters and endanger public health can not be acquired as a

private property right.  Neither the town nor an individual can acquire a prescriptive right to endanger public health by discharging sewage into public waters.  *Miles City* v. *State Board of Public Health,* 39 Mont. 405.  Such action, however long continued, not creating a property right, the state can not be required to pay the offender if discontinuance of the practice be ordered.  *Commonwealth* v. *Sisson,* 189 Mass. 247.  Chapter 125 relates to the exercise of police power and neither a municipal corporation nor an individual validly can protest that the carrying of the act into effect imposes a greater cost upon it or him than upon some one else, if the act can be fairly considered to be in protection of the public health and welfare.

Appellant asks us to consider the possibility that the financial town meeting will not vote the funds to provide for carrying out the order and that if it does not the town can not comply.  This claim can not affect the constitutionality of Chapter 125.  If the State has power to make the order we shall not assume that the town will disobey it.  In any event difficulty of enforcement is not a valid argument for unconstitutionality  Nor is there merit in the claim that appellant is deprived of the equal protection of the law or that the burdens of the State are not fairly distributed because the Board has acted against the town of East Providence and not taken a similar action against the cities of Providence, Pawtucket or Central Falls.  East Providence is polluting the river. It is violating the statute. The Board, after an extended display of patience has seen fit to perform its prescribed duty "to regulate or prohibit pollution of the waters of the state".  In passing we may observe that the evidence indicates that some attempts have been made by other cities to meet the Board's suggestions and that the Board has not given up hope of amicably arranging matters with the other cities.  In the case of East Providence, the evidence shows that the answer always has been that nothing can be done until the financial town meeting takes favorable action and that such meeting always takes

the position that conditions in the upper harbor at Providence are worse than in the Seekonk in East Providence and therefore it will not act.   What other cities have done or are doing, however, is entirely immaterial as far as the present order to East Providence is concerned.   Such a defense, if good, would effectually block all attempts of the state to preserve and protect public health.

Appellant wisely does not urge its proposition that "pollution" is vaguely and uncertainly defined in Chapter 125.   It is described so definitely as to justify the order now made upon the town either because its own sewage pollutes the stream or because in connection with other sewage it pollutes the stream.   The town's percentage of pollution is not important and what constitutes sewage is described with great care.   No other findings than those made by the Board could have been reached on the evidence and admissions of appellant.

(B)    The town already has an exhaustive report of the conditions and what may be done to remedy them made after lengthy investigation by a capable commission advised by experts.   (Respondent's Exhibit 2).  To display this plan to the Board by September 1, 1926, as its proposed answer to the order now appealed from is easy.   If insurmountable obstacles arise to prevent the carrying out of these plans by July 1, 1927, the town can make application for an extension of time.   Sec. 5.   On the testimony and the evidence now before us the completion of the work by July 1, 1927, does not seem unreasonable.   The Town Council of East Providence may call a special financial town meeting if necessary to raise the money to carry out the order, or, as suggested at some of the hearings, the proposition temporarily can be financed by short term notes without a special financial town meeting.   After all the delay and disclaimers of personal responsibility by the town solicitor and the town council based upon inaction of the financial town meeting, the Board was well warranted in ordering that definite action be taken to meet its reasonable demands.   The financial

town meeting can not be permitted by past and suggested future inaction to pay no heed to the legitimate orders of the State. The Board might have forbidden absolutely further pollution by raw sewage. Its orders are not vague. It intentionally left the handling of the local problems to East Providence. The Board under the act could have specified a system. Under the circumstances it wisely preferred to leave the system to the town. The action of the Board from the start instead of being arbitrary has been indulgent.

The appeal is dismissed, the petition is denied and the order complained of is sustained.

*Charles P. Sisson, Attorney General,* for State.

*A. Truman Patterson, Town Solicitor of Town of East Providence,* for Town.