Robert L. **BENDICK**, Jr., Director,
Department of Environmental
Management

v.

Nicholas E. **CAMBIO.**

No. 87–299–M.P.

Supreme Court of Rhode Island.

May 10, 1989.

Howard M. Cohen, Dept. of Environmental Management, for plaintiff.

John B. Webster, Michael A. Kelly, Adler, Pollock & Sheehan, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the petition for certiorari of Nicholas E. Cambio (petitioner) to review a decision of the Superior Court granting the motion of the Department of Environmental Management (respondent) to quash the petitioner's request for a jury trial. For the reasons set forth below, the petition for certiorari is granted in part. The facts of the case insofar as pertinent to this petition are as follows.

The petitioner owns property located south of Route 101 and approximately 1,200 feet east of Bungy Road in the town of Scituate, Rhode Island. In April of 1986, respondent issued a "notice of violation" to petitioner wherein he was ordered, in accordance with G.L.1956 (1976 Reenactment) § 2–1–23 and § 2–1–24(a), as amended by P.L.1980, ch. 406, § 10, to cease and desist from any further alteration of wetlands located on said property, and to restore the site to its condition as of July of 1971, on or before June 5, 1986. The notice of violation charged that petitioner "did accomplish or permit clear cutting, grading, excavation in and within 50 feet of a wooded swamp and destruction of several areas subject to storm flowage." In July of 1986, respondent and petitioner entered into a consent agreement (agreement) whereby the parties stipulated that

said agreement constituted "a final administrative decision under the Administrative Procedures Act (Title 42, chapter 35 of the General Laws of Rhode Island)." The agreement also provided that petitioner would pay an administrative fine of $1,000 per month for each month he violated the agreement and that the same was "enforceable by resort to [the] Superior Court." This agreement was amended in November 1986.

On December 29, 1986, respondent filed a three-count complaint and request for injunctive relief in the Superior Court. In count 1, respondent alleged that petitioner had been in violation of the agreement for more than five months and sought an administrative fine of $5,000 and a penalty (pursuant to § 2-1-24(a)) of up to $500 for every day that he violated an order of respondent. Count 2 alleged that petitioner violated the Fresh Water Wetlands Act, §§ 2-1-20 and 2-1-21(a), and sought a fine of $1,000 for each violation thereunder. Count 3 alleged that petitioner violated the Water Pollution Act, G.L.1956 (1980 Reenactment) chapter 12, of title 46, and sought a civil penalty of up to $5,000 for every day that said act was violated in accordance with § 46-12-13, as amended by P.L.1983, ch. 149, § 1. In addition, respondent sought equitable relief in temporarily restraining and permanently enjoining petitioner from altering the site without respondent's prior written approval, or from taking any action that might further pollute state waters. The petitioner in his answer to the complaint requested a trial by jury.

On December 30, 1986, a justice of the Superior Court heard oral argument with respect to respondent's request for a temporary restraining order. The justice granted respondent's request in part and ordered petitioner to make any necessary alterations on his property to prevent the flow of water and sediment onto Route 101 and neighboring properties. In addition, petitioner was ordered "forthwith [to] install stacked hay bales and/or a silt fence at the site conditional upon the [respondent] pointing out to the [petitioner] where the hay bales and fence should be placed." This order embodied the terms of the agreement. On January 12, 1987, this order was continued and modified regarding petitioner's preventive obligations. On February 11, 1987, an order was entered by the Superior Court that consolidated and modified the orders of December 30, 1986, and January 12, 1987. The modification of these orders again pertained to petitioner's preventive obligations regarding his property. However, this order additionally provided for weekly penalties of $750 to be imposed upon petitioner in the event of his violation of the order.

On June 17, 1987, a justice of the Superior Court granted respondent's motions to assign this case to the continuous nonjury trial calendar and to quash petitioner's request for trial by jury. The trial justice denied petitioner's request for a jury trial because he concluded that this action was a suit in equity that was not altered by respondent's seeking monetary penalties. The trial justice declined to extend the right to trial by jury to this type of litigation. On June 24, 1987, the trial justice entered an order to that effect.

█ In arguing in favor of a right to a jury trial in respect to the imposition of civil penalties, both parties have cited *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), a recent case decided by the United States Supreme Court. There the Court determined that the Seventh Amendment to the Constitution of the United States required a jury trial in respect to the determination of liability as a condition precedent to the imposition of civil penalties. The Seventh Amendment provides, "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Although the opinion of the Supreme Court in *Tull*, would obviously have persuasive value, we must begin by recognizing that the Seventh Amendment to the Federal Constitution is not an inhibition upon state power to determine when jury trials will be afforded in civil cases. Initially, the first eight amendments to the United States Constitution, the Bill of Rights, served only as a limitation upon the power of the feder-

al government and were not applicable to the states at all. *Barron v. Mayor and City Council of Baltimore,* 32 U.S. (7 Pet.) 243, 8 L.Ed. 672 (1833).

It was not until 1925 that the Supreme Court in *Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138, 1145 (1925), assumed that the First Amendment's freedoms of expression were sufficiently fundamental to be incorporated into the due process clause of the Fourteenth Amendment and thus freed from impairment by the states. Prior to this time in *Twining v. New Jersey,* 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908), the Court had reiterated the familiar principle that the Bill of Rights served solely as a limitation upon federal power. With the exception of the First Amendment, this limitation of applicability to the states continued, and the selective-incorporation doctrine was for the first time clearly enunciated in *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), and reiterated in *Adamson v. California,* 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903 (1947). In essence, the selective-incorporation doctrine was described first by Justice Cardozo in *Palko,* and later by Justice Frankfurter concurring in *Adamson,* as a process by which fundamental liberties contained in provisions of the Bill of Rights (or even if not therein contained) would be absorbed or incorporated into the due process clause of the Fourteenth Amendment and would thereby constitute a limitation upon state power. It was not until *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), that the right to privacy at the core of the Fourth Amendment was selectively incorporated into the due process clause by reason of its being implicit in the concept of ordered liberty. Twelve years later, in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Court adopted the exclusionary rule in the implementation of the Fourth Amendment guarantee as applicable to the states. Then with relative rapidity the Court selectively incorporated the Eighth Amendment ban on cruel and unusual punishment, *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); the Sixth Amendment right to

counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); the Fifth Amendment privilege against self-incrimination, *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); the Sixth Amendment right to confrontation, *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); the Sixth Amendment right to jury trial in criminal prosecutions, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); and finally the Fifth Amendment ban on double jeopardy, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969). In addition, the Court held earlier in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), that by implication there was a right of privacy to be found in the penumbras of the Bill of Rights read together with the Ninth Amendment. Thus far, the Supreme Court has not determined that the Seventh Amendment to the United States Constitution is implicit in the concept of ordered liberty and consequently applicable to the states. Indeed it has held specifically to the contrary in *Minneapolis & St. Louis R.R. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 596, 60 L.Ed. 961, 963 (1916). Thus each state is free to determine by application of its own constitution and common law when, and in what circumstances, the right to a jury trial shall attach in civil cases.

Although Rhode Island is not constrained by the mandate of the Seventh Amendment to the United States Constitution, article 1, section 15, of the constitution of this state guarantees that "[t]he right of trial by jury shall remain inviolate." *Briggs Drive, Inc. v. Moorehead,* 103 R.I. 555, 557, 239 A.2d 186, 187 (1968); *Mathewson v. Ham,* 21 R.I. 311, 43 A. 848 (1899). We have been stringent in the application of this imperative in both civil and criminal cases. *See, e.g., State v. Vinagro,* 433 A.2d 945 (R.I. 1981); *State v. Holliday,* 109 R.I. 93, 280 A.2d 333 (1971); *Rowell v. Kaplan,* 103 R.I. 60, 235 A.2d 91 (1967). We have stated that the right to trial by jury has been placed by the State Constitution beyond the power of the Legislature to alter or abolish

it. *Dyer v. Keefe,* 97 R.I. 418, 198 A.2d 159 (1964).

We, in common with the federal courts, were confronted with the problem of accommodating the right to jury trial as required by our constitution to the merger of law and equity pursuant to the Superior Court Rules of Civil Procedure. In seeking to preserve the right to trial by jury in a context of mixed legal and equitable claims, we have followed a course substantially parallel to that of the United States Supreme Court in *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), in expressing a policy that favors the jury trial and requires the determination of legal issues by a jury, even though certain issues in the case may be equitable. *Rowell v. Kaplan,* 103 R.I. 60, 235 A.2d 91 (1967); *Maryland Casualty Co. v. Sasso,* 98 R.I. 483, 204 A.2d 821 (1964). However, *Rowell v. Kaplan* seems to adhere more to the historical approach than did the Supreme Court in *Dairy Queen* and *Beacon Theatres.* This is consistent with our doctrine of preserving the right to trial by jury but not extending it as enunciated in *Gunn v. Union Railroad Co.,* 27 R.I. 320, 62 A. 118 (1905).

We approach our analysis of the jury trial issue raised in this case in the same spirit as did our predecessors in declaring that this right applies to all cases that were triable by jury at the time of the adoption of the Rhode Island Constitution in 1842 without any restrictions or conditions that would materially hamper or burden that right. *Mathewson v. Ham,* 21 R.I. 311, 43 A. 848 (1899). As pointed out in *Tull v. United States, supra,* penal statutes at common law were generally enforceable by an action for debt. This action was well known in Rhode Island practice wherein the common law forms of action continued in force until the adoption of rules of civil procedure in 1965. We are persuaded that Rhode Island courts in 1842, would as suggested in *Tull,* have enforced a penal statute through an action for debt that was triable at common law to a jury. *See generally* 1 *Chitty on Pleading,* 111–12 (13th Amer. ed. 1859); II Pollock and Maitland, *The History of English Law,* 203–216, 641 (2nd ed.1905). In the case at bar we have two types of claims asserted by respondent. These two types of claims should be dealt with separately.

## I VIOLATION OF CONSENT ORDER

The respondent has claimed in count 1 of his complaint that petitioner violated a consent order that was by agreement of the parties designated a "final administrative decision under the Administrative Procedures Act." Pursuant to this agreement, petitioner was to pay an administrative fine of $1,000 per month for each and every month that he remained in violation of the agreement. Count 1 of the complaint asks the Superior Court to enforce this agreement and to assess the penalty set forth by the parties. We believe that this claim bears a strong analogy to a motion to adjudge a litigant in civil contempt for violation of an order having the force of law. Such civil contempt proceedings have not historically been subject to jury trial in our state but have been addressed to the sound discretion of the trial justice. *See, e.g., School Committee of North Providence v. North Providence Federation of Teachers, Local 920,* 468 A.2d 272 (R.I.1983); *Brierly v. Brierly,* 431 A.2d 410 (R.I.1981); *Marek v. Marek,* 119 R.I. 841, 383 A.2d 1031 (1978); *Shonting v. Shonting,* 118 R.I. 475, 374 A.2d 797 (1977); *Tente v. Tente* 112 R.I. 636, 314 A.2d 149 (1974); *see also Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) (identical standard in federal courts).

In this instance the amount of the penalty was fixed by agreement of the parties and the only question (which invariably is raised in a contempt action) is whether the order or decree was violated. We are of the opinion that such a fact determination does not give rise to a right to trial by jury under the Rhode Island Constitution.

## II OTHER CIVIL PENALTIES CLAIMED

In addition to the fixed penalty of $1,000 for each month of violation of the

agreement, respondent also sought in counts 1, 2, and 3, additional statutory penalties of $500 per day pursuant to § 2-1-24(a) for violation of an order of the director, and $1,000 for each violation of filling or altering a fresh-water wetland without a permit, in violation of § 2-1-21(a), pursuant to § 2-1-23. Moreover, in count 3 respondent seeks a civil penalty of up to $5,000 for each day of violation of the Water Pollution Act § 46-12-5, pursuant to § 46-12-13.

These penalties as sought bear a closer analogy to the situation in *Tull* (where $22,890,000 in civil penalties were sought) than the agreed upon monthly penalty for violating the consent order. Here we have an open-ended claim for a significant sum pursuant to penal statutes that are enforceable only in the Superior Court and are not susceptible of imposition by administrative proceedings. We are persuaded by the reasoning in *Tull* that these civil penalties would have been enforceable at common law by an action for debt and would thus have been triable to a jury.[1] *See generally* 1 *Chitty on Pleading* at 111-12.

The mere fact that the legal claims are combined with claims for injunctive relief does not preclude determination by a jury of the legal issues set forth. *Rowell v. Kaplan, Maryland Casualty Co. v. Sasso,* both *supra.* This is consonant with the conclusions reached by the United States Supreme Court in *Dairy Queen, Inc. v. Wood,* cited with approval in *Rowell v. Kaplan.*

We are inclined, however, to depart from the majority opinion in *Tull,* which held that although liability would be determined by a jury on the legal claim, it was not essential for the jury to determine the amount of the penalties to be imposed. We are persuaded by the dissenting opinion of Justice Scalia, with whom Justice Stevens joined, wherein it was vigorously suggested that historically a jury would have determined not only civil liability but the amount of that liability as well. We see no reason to depart from this common law practice in determining the right to jury trial in respect to the assessment of civil penalties under the statutes at issue.

## III CLAIMS FOR INJUNCTIVE RELIEF

■ There is no question that claims for injunctive relief are clearly equitable. At no time, whether in 1842 or prior thereto, could injunctive relief be awarded by any tribunal other than a court of equity. Obviously the determination of whether to issue injunctive relief and enforce the same by a contempt order is one that would traditionally have been made by a justice in furtherance of equitable power without the intervention of a jury. On this aspect of the case no jury trial is appropriate or permissible. Our constitutional command requires only that the right to trial by jury be preserved, not extended. *Gunn v. Union Railroad Co.,* 27 R.I. 320, 62 A. 118 (1905). Many years ago this court recognized in *Board of Purification of Waters v. Town of East Providence,* 47 R.I. 431, 133 A. 812 (1926), that an administrative agency could order a party respondent, including a municipality, to cease and desist from polluting the waters of the state and that such cease-and-desist order would be enforceable without any right to trial by jury. It is significant that in that case no damages were sought, but only enforcement of an order to cease violation.

It should be noted in the case at bar that by an order of the court entered February 11, 1987, the trial justice provided for a payment of a sum of $750 per week in the event that the consent order providing for certain mandatory actions to be taken by the petitioner should be violated. Since the entire order was agreed to by the parties, neither the injunctive relief nor the prospective order for payment in the event of violation, is before us for review.

For the reasons stated, the petition for certiorari is granted in part. The petition-

---

**1.** At common law actions of debt could be tried by the ancient device of wager of law wherein oath compurgators could swear in support of a party's position. Strangely enough, although jury trial had largely replaced this practice, it was not totally eliminated until 1833. *See* Pollock and Maitland, *The History of English Law,* 601, 641 (2nd. ed.1905).

er's request for a jury trial must be granted in respect to all monetary claims, save those for violation of the consent order, but not for the claim for violation of the consent order, or for injunctive relief. The papers in the case may be remanded to the Superior Court with our decision endorsed thereon for further proceedings consistent with this opinion.