[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this Court is an appeal filed by Frederick and Louisa Williams (appellants) from a decision of the director of the Department of Environmental Management (DEM or department). The director of DEM held that the appellants violated G.L. 1956 (1987 Reenactment) § 2-1-21, the Freshwater Wetlands Act (the Act),[1] by altering a freshwater wetland without a permit. Jurisdiction in this Court is pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTS
The events giving rise to this matter began December 30, 1987. On that date the appellants filed a preliminary determination application with DEM, Division of Freshwater Wetlands. The application requested a determination as to whether freshwater wetlands were present on property located in Little Compton, Rhode Island and identified as tax assessor's plat 7, lot 8 (site or property). DEM Exh. 5; Tr. Sept. 16, 1991, p. 32. In addition to the application, the appellants filed a site plan noting the location of certain wet areas on the property. DEM Exh. 6.
After an on-site review of the property, and after a review of the biologist's report and other documents that were part of the application, Dean Albro, supervisor of DEM's division of freshwater wetlands, determined that freshwater wetlands were present on the property. Tr. Sept. 16, 1991, p. 64. A letter dated February 15, 1988 was sent to the appellants notifying them that freshwater wetlands were present and extended further than depicted on the submitted site plan. DEM Exh. 8; Tr. Sept. 16, 1991 p. 64-65. The letter also advised the appellants that DEM approval would be required for any proposed alteration of the property. DEM Exh. 8; Tr. Sept. 16, 1991 p. 64-65.
On November 7, 1988 DEM received a complaint concerning alleged violations of the Freshwater Wetlands Act on the property. DEM Exh. 2; Tr. Sept. 4, 1991 p. 68-71. As a result of this complaint, Stephen Tyrrell, Principal Natural Resource Specialist for DEM, Division of Freshwater Wetlands, inspected the site on December 6, 1988. Id. Mr. Tyrrell observed the following alterations: clearing, grading, filling, and stockpiling of debris; house and shed construction; and construction of an individual sewage disposal system (ISDS). DEM Exh. 2; Tr. Sept. 4, 1991 p. 77, 99-101; Tr. Sept. 6, 1991 p. 66-69. Mr. Tyrrell observed that these alterations occurred in and within 50 feet of a swamp, identified as a wetland. DEM Exh. 2; Tr. Sept. 4, 1991, p. 74.
In order to verify ownership of the site Mr. Tyrrell reviewed the preliminary determination application and site plan submitted by the appellants to DEM on December 30, 1987. Tr. Sept. 4, 1991 p. 129-130. On the application, the appellants certified that they were the owners of the property. DEM exh. 5; Tr. Sept. 16, 1991, p. 108, 112. Information on ownership was also obtained from the tax assessor's office in Little Compton Town Hall. Tr. Sept. 4, 1991 p. 117. Mr. Tyrrell examined tax assessor's maps and the ownership cards that accompany the plats and lots depicted on the tax assessor's maps. Tr. Sept. 4, 1991, p. 119. Based upon his investigation, Mr. Tyrrell concluded that the appellants owned the property. Tr. Sept. 4, 1991, p. 128.
On December 27, 1988 Mr. Tyrrell returned to the site. Tr. Sept. 4. 1991, p. 133. Mr. Tyrrell observed the delivery of building material and the presence of trucks and construction personnel at the site. Id. Mr. Tyrrell identified himself as a representative of DEM to Mr. Stephen Arruda, a person present at the site. Tr. Sept. 4, 1991, p. 133-135. Mr. Tyrrell explained that violations of the Freshwater Wetlands Act existed on property. Tr. Sept. 4, 1991, p. 136. Mr. Tyrrell then issued an order to cease and desist ordering Mr. Arruda to cease all filling, grading, construction or building in the swamp and in that area within 50 feet of the swamp. Tr. Sept. 4, 1991, p. 139-140.
On December 30, 1988 a notice of violation was issued to the appellants for violating the Freshwater Wetlands Act by altering freshwater wetlands without obtaining the approval of DEM. DEM Exh. 9, Tr. Sept. 16, 1991 p. 68-69. Specifically, the notice of violation cited the appellants for clearing, grading, filling, stockpiling debris, constructing a shed and portions of an individual sewage disposal system, and creating soil disturbance within a swamp and within 50 feet of the edge of the swamp. DEM Exh. 9. The notice ordered the appellants to (1) cease and desist immediately from any further alteration of the wetland; (2) restore the wetland to its state as of July 16, 1971, the effective date of the Freshwater Wetlands Act, insofar as possible; (3) contact DEM prior to the commencement of restoration to ensure proper supervision and to obtain required restoration details from DEM; and (4) pay an administrative penalty totaling $2,000, $1,000 for altering a swamp and $1,000 for altering that area within 50 feet of swamp. DEM Exh. 9.
The appellants requested a hearing before the director of DEM concerning the notice of violation and the cease and desist order. DEM Exh. 10; Tr. Sept. 16, 1991, p. 102. An Administrative Adjudication Division (AAD) hearing officer heard testimony beginning September 4, 1991 and continuing September 6, 16, and 17, 1991.
On January 17, 1992 the hearing officer issued a recommended decision and order (recommended decision). That decision recommended the dismissal of the notice of violation and order because DEM failed to prove by a preponderance of the evidence that the appellants or their agents altered the wetlands present on the appellant's property. Pursuant to her authority under G.L. 1956 (1988 Reenactment) § 42-17.7-6 and after reviewing the recommended decision, the director of DEM reversed the hearing officer's recommended decision. The director held that DEM had proven by a preponderance of the evidence that the appellants, through their agents, requested or allowed the alterations of the freshwater wetlands existing on their property. The director remanded the matter to the AAD hearing officer for consideration of: (1) whether the administrative penalty was properly assessed and (2) the terms of restoration.
The hearing officer issued a supplemental recommended decision ordering the appellants to pay the $2,000 penalty and to restore the freshwater wetland to its state as of July 16, 1971. On February 17, 1992 the director issued a final decision and order requiring the appellants to pay the penalty and to restore the wetland. The appellants appealed this final decision to this Court on February 25, 1992.
The appellants argue that the decision appealed from should be reversed for the following reasons:
 (1) The record is devoid of any evidence that either the appellants or their agents violated the Act.
 (2) The imposition of a penalty absent a trial by jury violates Art. 1, § 15 of the Rhode Island Constitution;
 (3) The recording of a notice of violation in the land evidence records absent a pre-deprivation or an immediate post-deprivation hearing violates the due process clauses of the Rhode Island Constitution, Art. 1, § 2 and the fifth and fourteenth amendments of the United States Constitution.
 (4) The order to restore the wetland is a mandatory injunction that is vague and unenforceable.
STANDARD OF REVIEW
Pursuant to G.L. § 42-35-15, the Superior Court possesses appellate jurisdiction to review decisions of various state agencies. Section 43-35-15 provides in pertinent part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing an agency decision, this Court must not substitute its judgment for that of the agency in regard to the credibility of the witnesses or weight of the evidence concerning questions of fact. Costa v. Registry of Motor Vehicles,543 A.2d 1307 (R.I. 1988). Even in cases where the Court after reviewing the certified record and evidence might be inclined to view the evidence differently than did the agency, it must uphold the agency decision if it finds any competent evidence upon which the agency decision rests. E. Grossman and Sons. Inc. v. Rocha,118 R.I. 276, 373 A.2d 496, (1977); Cahoone v. Board of Review,104 R.I. 503, 506, 246 A.2d 213 (1968). Alternatively, this Court may vacate the agency decision if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record. Thus, the Court will reverse factual findings of an administrative agency only when they are devoid of competent evidentiary support. Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 270 (R.I. 1981).
Recently, the Supreme Court of Rhode Island has expanded this standard when reviewing a decision of DEM. EnvironmentalScientific Corp. v. Durfee, 621 A.2d 200 (R.I. 1993). First, the reviewing Court must evaluate whether credibility determinations were made by the administrative hearing officer. Id. at 207. When credibility is in issue, the reviewing Court must consider the great deference that the director must give to the hearing officer's findings and conclusions. Id. at 209. Such findings and conclusions should be affirmed by the director unless clearly wrong. Id. However, the absence of credibility determinations streamlines the appellate review process. Id. at 206. Credibility is not in issue when all the evidence presented is in written form or the evidence relied upon is uncontradicted. Id.
at 206-207. When firsthand observations are not in issue, the director may review the findings of the hearing officer de novo.Id. at 207.
THE AGENCY DECISION
The appellants argue that DEM's decision is clearly erroneous in view of the reliable, probative, and substantial evidence on the record. Appellants' Brief, p. 31. They contend that DEM did not meet its burden because it failed to prove by a preponderance of the evidence that either the appellants or their agents altered the wetland. Appellants' Brief, p. 31-34. Therefore, the appellants argue that the director of DEM erred by reversing the hearing officer and holding, as a matter of law, that DEM met its burden of proof by a fair preponderance of the evidence. Appellants' Brief, p. 35.
The Department argues that the decision ordering restoration and an administrative penalty is supported by reliable, probative, and substantial evidence on the record. DEM's Brief, p. 6. The Department contends that it met its burden of proof by establishing by a preponderance of the evidence that the appellants or their agents altered state jurisdictional wetlands. DEM's Brief, p. 7. Thus, DEM concludes that it is entitled to equitable relief and an administrative penalty. DEM's Brief, p. 7.
At the AAD hearing DEM has the burden of showing by a preponderance of the evidence that:
 (1) the property owned by the appellants is state jurisdictional wetlands.
 (2) the appellants or their agent(s) or servant(s) altered or permitted alterations of the wetlands in violation of G.L. § 2-1-2.
 (3) the state is entitled to equitable relief in accordance with G.L. § 2-1-24 and an administrative penalty in accordance with G.L. § 42-17.1-2(u). See St. v. Distante, 455 A.2d 305 (R.I. 1983) and G.L. § 42-17.6-4(a).
The appellants do not contest the director's findings of fact that freshwater wetlands exist on the appellant's property; such wetlands were altered without a statutorily required permit; and the alterations occurred sometime between January 29, 1988 and December 6, 1988. See Final Decision and Order entered February 17, 1992, findings of fact nos. 1, 9, 10, 11, 13, 15, 16, 18. However, the appellants argue that DEM failed to establish by a preponderance of the evidence that the appellants or their agents or servants altered or permitted alterations of the wetlands in violation of G.L. § 2-1-21. A close examination of the record before this Court leads to a contrary conclusion.
At the AAD hearing, DEM presented witnesses who testified as follows. On December 30, 1987 the appellants submitted a preliminary determination application and site plan to DEM. According to the application, the appellants were the owners of the property. Furthermore, the appellants stated that they "propose[d] to build a home on the site in the near future."See DEM Exh. 5. After an inspection by DEM the appellants were notified by letter dated February 15, 1988 that wetlands existed on the property and DEM approval would be required prior to any alteration.
However, rather than receiving a request from the appellants for permission to alter the wetlands, DEM received a complaint concerning construction activity at the site. An inspection on December 6, 1988 revealed that construction had begun on a house foundation, a shed, and an individual sewage disposal system (ISDS). A second inspection on December 27, 1988 revealed that persons at the site were delivering and receiving lumber and building material. These people told a DEM representative that they were working for the appellants. Tr. Sept. 16, 1991, p. 129. An examination of the land records revealed that the appellants were the owners of the property at the time of the alterations. The Department concluded that the appellants began construction of a home upon the wetlands consisted with their proposal in the preliminary determination application without DEM approval and in violation of the Act. As a result, DEM issued a notice of violation to the appellants.
After DEM completed the presentation of the above evidence and rested its case, the appellants made an oral motion to dismiss. Tr. Sept. 17, 1992, vol. 1, p. 12. The hearing officer declined to rule on that motion until the close of all the evidence, at which time the appellants waived their right to present evidence and rested. Tr. Sept. 17, 1992, vol. 2, p. 12. In his recommended decision, which acted as a decision on the motion to dismiss, the hearing officer recommended dismissal of the notice of violation because DEM failed to establish by a preponderance of evidence that the appellants or their agents altered the wetlands. The director of DEM rejected this recommended decision and upheld the notice of violation.
On appeal this Court is required to uphold the agency decision if it finds any competent evidence upon which that decision rests. This Court must also consider the deference the director of DEM must give to the hearing officer's decision when credibility determinations are involved. However, in the case before this Court, the director was not required to give great deference to the findings of the hearing officer because credibility determinations were not implicated in the hearing officer's decision. The hearing officer's decision was not based upon a weighing of conflicting testimony presented by adverse witnesses. Rather, the decision was based upon a determination that the evidence did not meet the preponderance standard. In re-weighing the evidence presented, rather than re-evaluating the credibility of the witnesses, the director concluded that DEM had met its burden of proof and had established by a preponderance of the evidence that the appellants, through their agents, altered a freshwater wetland in violation of the Act. Similarly, this Court finds that the evidence before the hearing officer, before the director, and now before this Court is uncontradicted and establishes by a fair preponderance that the appellants, through their agents, directed the alteration of freshwater wetlands located on their property.
Based upon the foregoing evidence and an application of the appropriate standard of review, this Court finds that the record contains reliable, probative, and substantial evidence submitted by DEM to establish by a preponderance of the evidence that the appellants, through their agents, directed the alteration of a freshwater wetland without obtaining DEM approval and in violation of the Act.
THE ADMINISTRATIVE PENALTIES
After reviewing the recommended decision of the hearing officer, the director of DEM ordered the appellants to pay a penalty totaling $2,000, $1,000 for altering a swamp and $1,000 for altering an area within 50 feet of a swamp. The appellants argue that this penalty was a civil penalty imposed absent a jury trial. Therefore, the appellants contend that DEM violated Art. I, § 15 of the Rhode Island Constitution, which provides that the "right of trial by jury shall remain inviolate."
The Department contends that the assessment and imposition of an administrative penalty does not violate the appellants' constitutional rights. The Department argues that this state's legislature clearly intended to delegate the assessment of administrative penalties to DEM. The director's decision to impose an administrative penalty is supported by the record and in accordance with the applicable law, DEM argues.
At this point, a review of the statutes concerning the imposition of administrative penalties by DEM, is instructive. According to G.L. § 42-17.1-2(v), the director of DEM has the power and duty "[t]o impose administrative penalties in accordance with the provisions of Chapter 17.6 of this title." Chapter 17.6, "Administrative Penalties for Environmental Violations" (Penalties Act) provides in pertinent part:
 42-17.6-2. Authority of director to assess penalty.
— The director may assess an administrative penalty on any person who fails to comply with any provision of any rule, regulation, order, permit, license, or approval issued or adopted by the director, or any law which the director has the authority or responsibility to enforce. Any such penalty shall be an alternative to any other civil penalty that may be prescribed by law.
The administrative penalty shall not be more than $1,000 for each violation. G.L. § 42-17.6-7. Each occurrence and/or day during which the violation or failure to comply is repeated constitutes a separate and distinct violation. Id. Furthermore, G.L. §42-17.6-8 requires the director of DEM to promulgate rules and regulations for assessing administrative penalties. These rules and G.L. § 42-17.6-6 provide guidelines for determining the amount of each administrative penalty.
Whenever the director seeks to impose an administrative penalty, the landowner is entitled to an adjudicatory hearing pursuant to the Administrative Procedures Act. G.L. § 42-17.6-4. If an administrative penalty is assessed after an adjudicatory hearing, review may be sought in the Superior Court pursuant to the Administrative Procedures Act. G.L. § 42-17.6-5.
The constitutionality of the imposition of a civil penalty absent a jury trial has been addressed by the Rhode Island Supreme Court in Bendick v. Cambio, 558 A.2d 941 (R.I. 1989). DEM issued a notice of violation to Nicholas E. Cambio (Cambio) ordering him to cease and desist from any further alteration of wetlands located on his property. Bendick, 558 A.2d at 941. The parties entered into a consent agreement stipulating that the agreement constituted a final administrative decision under the Administrative Procedures Act; Cambio would pay an administrative fine of $1,000 per month for each month he violated the agreement; and the consent agreement was enforceable by resort to the Superior Court. Id. at 941-42.
Five months later, DEM filed a three-count complaint and request for injunctive relief in Superior Court. Id. at 942. Count 1 alleged that Cambio had been in violation of the consent agreement for more than five months and sought an administrative fine of $5,000 and a penalty pursuant to G.L. § 2-1-24(a) of up to $500 for every day he violated DEM's order. Id. Count 2 alleged that Cambio violated the Freshwater Wetlands Act, §§2-1-20 and 2-1-21(a), and sought a fine of $1,000 for each violation thereunder. Id. Count 3 alleged that Cambio violated the Water Pollution Act, G.L. 1956 (1980 Reenactment) chapter 12, of title 46, and sought a civil penalty of up to $5,000 for every day that the act was violated in accordance with G.L. § 46-12-13.Id.
Cambio's request for a jury trial was denied. Id. The trial justice entered an order that this was a suit in equity that was not altered by DEM's seeking monetary penalties. Id. From this order Cambio filed a petition for writ of certiorari. Id.
After presenting an historical review of the right to a jury trial, the Rhode Island Supreme Court stated that the "right [to trial by jury] applies to all cases that were triable by jury at the time of the adoption of the Rhode Island Constitution in 1842 without any restrictions or conditions that would materially hamper or burden that right." Id. at 944 (citing Mathewson v.Ham, 21 R.I. 311, 43 A. 848 (1899)). Applying this standard, the Court held that Cambio was not entitled to a jury trial under Count 1 of the complaint in which DEM sought an administrative fine of $5,000 pursuant to the consent agreement. Cambio at 944. The Court stated that there was no right to trial by jury for the violation of the consent agreement because the claim was analogous to a civil contempt proceeding which historically have not been subject to jury trial in this state. Id.
More important to the case at bar, however, is the Court's holding that Cambio was entitled to a jury trial for those civil penalities sought pursuant to the Freshwater Wetlands Act and the Water Pollution Act. Id. at 945. The Court noted that "[h]ere we have an open-ended claim for a significant sum pursuant to penal statutes that are enforceable only in the Superior Court and are not susceptible of imposition by administrative proceedings." Id. In light of those factors, the Court concluded "that these civil penalties would have been enforceable at common law by an action for debt and would thus have been triable to a jury." Id. Thus, the Court concluded that a jury shall determine Cambio's liability under the Freshwater Wetlands Act and the amount of the penalties to be imposed. Id.
The Rhode Island Supreme Court again addressed the issue of the right to a jury trial for administrative penalties in RonciCo. v. Narragansett Bay Water Quality Management DistrictCommission, 561 A.2d 874 (R.I. 1989). In Ronci, the Narragansett Bay Water Quality Management District Commission (commission) imposed a civil penalty of $219,950 and ordered compliance with regulations imposing limits on the specific quantities and types of pollutants that may be discharged.Ronci, 561 A.2d at 875-76. Ronci, acting pursuant to the Administrative Procedures Act, appealed the commission's order to the Superior Court. Id. at 876.
The trial justice affirmed the order requiring compliance with the regulations, but reversed and vacated the monetary penalty because "the plain and unambiguous language of the enabling act precluded the commission from imposing civil fines."Id. Thereafter, both parties filed petitions for writs of certiorari, which were consolidated by the Rhode Island Supreme Court. Id.
The Court held that the commission has the "authority to establish toxic-discharge limitations and, once a violation of these regulations has been established, `to order the violator to cease or desist or to remedy such violations.'" Id. at 879. The Court further stated that at the time of the dispute, the commission had no power under the enabling legislation to require that Ronci pay $219,950 in civil penalties. Id. at 881. However, the Court noted that subsequent to the dispute amended statutory language expressly authorized the commission to impose administrative penalties. Id. Thus, the Court addressed the issue of "whether the right to a jury trial attaches under our state constitution to a proceeding wherein the commission seeks the imposition or enforcement of a civil penalty." Id. The Court concluded that the right to jury trial does attach to such proceedings. Id. at 882. Citing Bendick v. Cambio, "the Court stated that the jury's role in civil-penalty proceedings should include both the determination of liability and the assessment of penal damages." Id.
Based upon the Rhode Island Supreme Court decisions ofBendick and Ronci, this Court concludes that DEM has the authority to enforce this state's Freshwater Wetlands Act, and once a violation of the Act has been established, to order the violator to cease or desist or to remedy such violations. However, if DEM seeks to impose an administrative penalty under the Act, the right to a jury trial attaches to the civil-penalty action. That jury must determine the landowner's liability under the Act and the amount of the penalty to be imposed.
Thus, that portion of the director's final decision and order, filed February 17, 1992, ordering the appellants to pay an administrative penalty of $2,000, is vacated. This matter will be assigned to the jury trial calendar for a determination of the appellants' liability under the Freshwater Wetlands Act and the amount of the penalty to be imposed.
DUE PROCESS AND RECORDING THE NOTICE OF VIOLATION
The appellants argue that the recording of the notice of violation by DEM violates the due process requirements of the fifth and fourteenth amendments of the United States Constitution. Such a recording, the appellants contend, creates a lien on the property and substantially interferes with the property rights of the owner. The appellants assert that this deprivation occurs without minimal due process safeguards, including a pre-deprivation notice or an opportunity to be heard. Therefore, the appellants conclude that the recordation violates the due process clauses of the United States Constitution. Thus, the appellants urge this Court to declare the DEM recording provision unconstitutional.
The Department argues that the recording of a notice of violation does not violate the due process requirements of the fifth and fourteenth amendments to the United States Constitution. The filing of the notice does not create a lien on the property. DEM argues. Rather, the recording is intended solely to provide notice to the general public and unsuspecting purchasers of the pendency of an enforcement action alleging the improper alteration of wetlands on the property. The Department argues that the timing, purpose, and scope of the recording of the notice require this Court to find that the process is constitutional.
The statutory provision which this Court must examine is G.L. 1956 (1987 Reenactment) § 2-1-24(a). Pursuant to that statute, DEM may file a notice of violation with the recorder of deeds. Specifically, that statute provides in pertinent part:
. . . Any order or notice to restore wetlands shall be eligible for recordation under chapter 13 of title 34 and shall be recorded in the land evidence records in the city/town wherein the subject wetland is located, and any subsequent transferee of the wetland shall be responsible for complying with the requirements of the order or notice . . .
Although this specific statute has not undergone due process scrutiny, several federal court decisions have outlined the two-part analysis established by the United States Supreme Court for due process challenges to statutes involving property interests. See Reardon v. U.S., 947 F.2d 1509 (1st Cir. 1991). First, the analysis focuses on whether the statute authorizes the taking of a "significant property interest" protected by the fifth amendment. Reardon, 947 F.2d at 1517 (citing Fuentes v. Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972)). "If there is no significant property interest involved, the inquiry is at an end. If there is, one proceeds to examine what process is due in the particular circumstances." Id. at 1517-18.
Thus, this Court's initial inquiry is whether the recordation of the notice of violation pursuant to G.L. § 2-1-24(a) amounts to a deprivation of a significant property interest. To address this issue, this Court relies on the general principles of statutory construction and constitutional analysis.
In In re Advisory Opinion to the House of Representatives,485 A.2d 550, 552 (R.I. 1984), the Rhode Island Supreme Court set forth the standards employed when construing a statute that has been challenged on constitutional grounds:
 It is also well settled that this court will presume legislative enactments of the General Assembly to be constitutional and valid, Gorham v. Robinson, 57 R.I. at 7, 186 A. at 837, and will so construe legislative enactments if such a construction is reasonably possible. Landrigan v. McElroy, 457 A.2d 1056, 1061 (R.I. 1983); Jamestown School Committee v. Schmidt, 122 R.I. 185, 191, 405 A.2d 16, 19 (1979). If more than one construction is possible, we shall always adopt the construction that will avoid unconstitutionality. Opinion to the House of Representatives, 99 R.I. 382, 387, 208 A.2d 116, 119 129 (1965).
A party challenging the constitutional validity of an act carries the burden of persuading the Court that the act violates an identifiable aspect of the state or federal constitution.Brennan v. Kirby, 529 A.2d 633, 639 (R.I. 1987).
Furthermore, this Court's paramount task in construing a statute is to ascertain the intent behind the enactment of that statute and to effectuate that intent whenever lawful and within the competence of the legislature. Dunne Leases Cars TrucksInc. v. Kenworth Truck Co., 466 A.2d 1153, 1156 (R.I. 1983). Courts should effectuate the intent of the legislature by examining the language, nature, and object of the statute under consideration, and by giving the words of the statute their plain and ordinary meaning. Lake v. State, 507 A.2d 1349, 1351-52 (R.I. 1986). When the language of a statutory provision is clear on its face, the Court must give effect to the plain meaning of that provision. Gilbane Co., v. Poulas, 576 A.2d 1195, 1196 (R.I. 1990).
A close reading of G.L. § 2-1-24(a) reveals that the statute allows DEM to record "any order or notice to restore wetlands . . . in the land evidence records." The recordation is pursuant to chapter 13 of title 34 of the General Laws, entitled "Recordation of Instruments", which provides that "[s]uch record or filing shall be constructive notice to all persons of the contents of such instruments and other the [sic] matters so recorded, so far as the same are genuine." G.L. § 34-13-2 (emphasis added).
The legislature determined that the recordation would be pursuant to chapter 13 of title 34, entitled "Recordation of instruments" and not pursuant to chapter 5 of title 10, entitled "Attachments." An attachment is a specific, detailed statutory procedure, through which a judge, after a hearing, issues a specific writ that a court officer leaves with a town clerk or recorder of deeds, which writ creates a lien on the property attached which is held in the custody of the law. Bogosian v.Woloohojian Realty Corp., 923 F.2d 898, 901 (1st Cir. 1991). (citing Everett v. Cutler Mills, 52 R.I. 330, 333, 160 A. 924
(1932)); In re Gibbons, 459 A.2d 938, 939 (R.I. 1983). In contrast, the notice of violation, recorded by DEM pursuant to chapter 13 of title 34 of the General Laws is a statutory procedure employed by DEM to give notice to the general public and unsuspecting purchasers of a pending enforcement action for alleged violations of the Freshwater Wetlands Act. This notice is particularly important because G.L. § 2-1-24(a) also states that "any subsequent transferee of the wetland shall be responsible for complying with the requirements of the order or notice." Thus, after evaluating these statutory provisions, this Court concludes that the legislature intended that the purpose and effect of the DEM recording statute, G.L. § 2-1-24(a), is merely to provide notice to the public and does not amount to a deprivation of a significant property interest.
This Court further finds that the recording of the notice of violation is similar in both purpose and effect to the filing of a lis pendens pursuant to G.L. 1956 (1985 Reenactment) § 9-4-9. The term "lis pendens" literally means litigation or suit pending, Kent Estates, Inc. v. Matteson, 97 R.I. 230, 233,197 A.2d 292, 294 (1964), and its effect has been summed up in these words:
 That he who purchases property pending a suit in which the title to it is involved, takes it subject to the judgment or decree that may be passed in such suit against the person from whom he purchases. Pierce v. Redd, 72 R.I. 4, 11, 47 A.2d 906, 910 (1946) (quoting Brightman v. Brightman, 1 R.I. 112, 119 (1848)). See George v. Oakhurst Realty, Inc., 414 A.2d 471, 474 (R.I. 1980).
Although the notice of violation involves alleged violations of the Freshwater Wetlands Act, rather than title to the property on which those alleged violations occurred, this Court concludes that each procedure's purpose and effect is to give prospective purchasers notice. In George v. Oakhurst Realty, Inc.,414 A.2d 471, 474 (R.I. 1980) the Rhode Island Supreme Court held as follows:
 We have long rejected the proposition that a notice of lis pendens is the equivalent of an attachment. See, e.g., Campbell v. Metcalf, 20 R.I. 352, 39 A. 190 (1898). Lis pendens is fundamentally different from prejudgment garnishment, attachment, or replevin. Those actions are confiscatory and therefore improper without prior notice and opportunity to be heard. See North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Lis pendens instead is not a lien but merely puts all prospective purchasers on notice that there is a suit pending involving an issue of title to the real property. We therefore find that due process of law does not mandate notice and opportunity to be heard before the filing of a notice of lis pendens under G.L. 1956 (1969 Reenactment) § 9-4-9.
Similarly, this Court concludes that the recording of the notice of violation does not create a lien but merely puts all prospective purchasers on notice that there is a suit pending involving alleged violations of the Freshwater Wetlands Act. This Court therefore finds that due process of law does not mandate notice and opportunity to be heard before the filing of a notice of violation under G.L. 1956 (1987 Reenactment) § 2-1-24(a).
Based on the foregoing, this Court finds that the recording of a notice of violation pursuant to G.L. § 2-1-24(a) does not amount to a deprivation of a significant property interest. Therefore, the appellants' due process rights under the Rhode Island Constitution, Art. I, § 2 and the fifth and fourteenth amendments of the United State's Constitution have not been violated.
ENFORCEABILITY OF THE RESTORATION ORDER
The appellants argue that the notice of violation ordering them to restore the wetlands and to obtain restoration details from DEM is a mandatory injunction. The appellants contend that the order is vague and contains terms with which they cannot comply. The appellants argue that at the hearing DEM failed to introduce evidence of the state of the wetland as of July 16, 1971 and failed to introduce evidence of the required restoration details. Since the injunction is not specific, the appellants argue that it is not enforceable.
The Department argues that the notice of violation is not a judicially ordered injunction subject to contempt proceedings. The restoration order is a statutorily prescribed remedy made available to the director by the legislature to enable DEM to seek compliance with its statutes, rules, and regulations, DEM argues. Nonetheless, DEM asserts that if this Court were to affirm the restoration order, the order would satisfy the specificity requirements. The Department contends that the record in this case contains uncontested and credible expert testimony regarding exactly what activities are necessary in order to restore the wetlands to their natural condition. Thus, DEM concludes that the provisions in the notice of violation ordering the restoration of the wetland are specific and enforceable.
General Law 1956 (1987 Reenactment) § 2-1-23, provides that "the director of environmental management shall have the power to order complete restoration of the freshwater wetland area involved by the person or agent responsible for the violation." In the case before the Court the director sustained the notice of violation issued to the appellants and held that the appellants, through their agents, were responsible for the unauthorized alteration of the freshwater wetlands located on the property. Thus, pursuant to the power of enforcement found in G.L. §2-1-23, the director ordered the appellants to restore the freshwater wetlands to their state as of July 16, 1971 insofar as possible. The appellants were also ordered to contact DEM prior to the commencement of restoration to ensure proper supervision and to obtain the required restoration details from a representative of DEM's freshwater wetlands division. The appellants argue that this order is vague, unreasonable, and unenforceable. Such an argument, however, is supported by neither the record before this Court nor the clear language and policy of the Freshwater Wetlands Act.
In passing the Freshwater Wetlands Act, the legislature "intended to preserve and regulate the use of swamps, marshlands and other freshwater wetlands." G.L. 1956 (1987 Reenactment) §2-1-18. The legislature recognized that "protection of swamps, marshes, and other freshwater wetlands from random, unnecessary, and/or undesirable drainage, excavation, filling, encroachment, or any other from of disturbance or destruction . . . [is] in the best public interest and essential to the health, welfare, and general well being of the general populace and essential to the protection of property and life . . ." Id. Furthermore, the Rhode Island Supreme Court has recognized that "[t]he act intends to preserve wetlands in this state, as they existed when the act was passed in 1971, unless permission is granted by the director to allow alterations." Wood v. Davis, 488 A.2d 1221, 1224 (R.I. 1985).
With this policy in mind the legislature determined that no person shall alter a freshwater wetland, as defined by G.L. 1956 (1987 Reenactment) § 2-1-20, without first obtaining the approval of the director of DEM. G.L. 1956 (1987 Reenactment) § 2-1-21(a). If in the opinion of the director granting approval would not be in the best public interest, approval will be denied. Id. In the event of a decision in favor of granting an application to alter a freshwater wetland, the director must issue a permit to the applicant. G.L. 1956 (1987 Reenactment) § 2-1-22(d). The permit may be issued upon such terms and conditions, including time for completion, as the director may require. Id.
(emphasis added).
Applying the foregoing statutes, it is clear that if the owner of freshwater wetlands intends to alter such wetlands with DEM approval, the director may supervise the alteration by placing terms and conditions upon the alterations. Similarly, this Court concludes if the owner of freshwater wetlands intends to alter such wetlands without DEM approval, then the director may supervise the restoration by placing terms and conditions upon the restoration. A review of the record before this Court reveals that there is substantial evidence regarding what terms and conditions must be met by the appellants in order to restore the wetlands to their state as of July 16, 1971, insofar as possible.
At the AAD hearing, Dean Albro, supervisor of DEM's division of freshwater wetlands, testified as an expert in wetland ecology. Mr. Albro testified that DEM is able to determine how the area can be restored insofar as possible to its natural condition by reviewing aerial photographs taken at different year intervals, including photographs taken at the time of the passage of the Freshwater Wetlands Act. Id. at 93. Based upon his review of aerial photographs of the appellants' property, Mr. Albro testified as follows.
In order to effectively restore the site to its state as of July 16, 1971 the appellants would have to remove the shed and its supporting structures. Id. p. 96. Any vegetation that had been cut and stockpiled would have to be removed. Id. All material placed within the swamp would have to be removed. Id.
Furthermore, Mr. Albro testified that all fill material and structures, including the individual sewage disposal system and the foundation, must be removed. Id., p. 96-97. The grades within the wetland on the appellants' property must be returned to the original pre-alteration grade. Id., p. 97. After the fill and structures are removed and the area is re-graded, the appellants must stabilize the wetland with mulch material to prevent further erosion. Id. Mr. Albro also testified that the altered area must be replanted with shrubs and trees, seeded, and fertilized. Id. The trees and shrubs once planted should be maintained for at least one full growing season. Id. Mr. Albro concluded that once the area has stabilized and all plantings survive one full growing season, the site should be left in its natural state. Id. In short, the appellants were to undo the damage they had caused the wetland through their unauthorized alterations.
This Court has previously held that there is substantial and probative evidence that the appellants through their agents altered freshwater wetlands located on their property without receiving a permit from DEM. These alterations occurred even though the appellants were notified, by letter dated February 15, 1988, that DEM approval would be required for any proposed alteration of the freshwater wetlands. Since the appellants failed to obtain DEM approval, DEM is authorized by statute to order the appellants to restore the site to its state as of July 16, 1971.
Furthermore, this Court finds that DEM has produced sufficient credible and probative evidence of record for the appellants to determine what is necessary for full restoration. Nevertheless, that restoration should be conducted with DEM supervision in order to ensure that the restoration is done completely and properly. Requiring DEM supervision does not weaken DEM's statutory remedy of ordering complete restoration and does not make such restoration order unenforceable or vague.
Thus, this Court finds that the notice of violation ordering the appellants to restore the site to its condition as of July 16, 1971, insofar as possible, and to contact DEM prior to the commencement of restoration to ensure proper supervision and to obtain required restoration details is enforceable.
CONCLUSION
Based upon a thorough review of the record, this Court concludes that DEM submitted reliable, probative, and substantial evidence to establish by a preponderance of the evidence that the appellants, through their agents, directed the alteration of freshwater wetland, without obtaining DEM approval and in violation of the Freshwater Wetlands Act. However, if DEM seeks to enforce the administrative penalty of $2,000, then the appellants are entitled to a jury trial for a determination of the appellants' liability under the Act and the amount of the penalty to be imposed. This Court further finds that the recording of a notice of violation pursuant to G.L. § 2-1-24(a) does not amount to a deprivation of a significant property interest. Therefore, the appellants' due process rights under the Rhode Island Constitution, Art. 1, § 2 and the fifth and fourteenth amendments of the United States Constitution have not been violated. Finally, this Court finds that the notice of violation ordering the appellants to restore the site to its state as of July 16, 1971, insofar as possible, and to contact DEM prior to the commencement of restoration to ensure proper supervision and to obtain required restoration details is enforceable.
Regarding the foregoing, counsel shall prepare the appropriate judgment for entry.
[1] Although not specifically entitled "Freshwater Wetlands Act," this Court will refer to the Act as such for convenience.